Jackie E. RICHARDSON, Petitioner,

v.

David MILLER, Respondent.

No. 88-1136-CV-W-9-JWO-P.

United States District Court, W.D. Missouri, W.D.

June 30, 1989.

Jackie E. Richardson, Boonville, Mo., pro se.

Patrick King, Missouri Atty. Gen., Jeff City, Mo. for respondent.

### MEMORANDUM AND ORDERS

JOHN W. OLIVER, Senior District Judge.

#### I

This state prisoner case pends in this division of the Court pursuant to an order of transfer entered by the Honorable D. Brook Bartlett. The order to show cause entered by Judge Bartlett stated that "[p]etitioner challenges his 1986 conviction and sentence for second-degree assault entered upon his plea of guilty in the Circuit Court of Saline County, Missouri. Petitioner raises four grounds for relief: (1) he

was denied effective assistance of counsel because counsel merely wanted petitioner to plead guilty; (2) he was denied effective assistance of counsel because counsel did not question petitioner 'about answers that was [sic] given to prosecuter [sic],' Petition, p. 6; (3) he was denied effective assistance of counsel in that counsel failed to interview and subpoena eyewitnesses who could have provided petitioner with a defense to the crime; and (4) he was denied effective assistance of counsel in that counsel failed to file a motion to suppress evidence that was detrimental to petitioner's case." Doc. # 2 at 1–2.

We find and conclude that the petitioner's *pro se* petition alleges with sufficient particularity a violation of his right to the effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution of the United States.

The respondent's response fails to address the merits of petitioner's federal constitutional claim. Rather, respondent contends that because "petitioner has failed to file a Missouri Supreme Court Rule 24.035 motion during the time for him to do so, petitioner has defaulted on his available state remedies."[1] Respondent's Response at 2. Respondent accordingly prayed that "this Court dismiss this petition without further judicial proceedings." *Id.*

#### A.

This case presents two questions. First, whether, the prayer of the respondent's response that this case be summarily dismissed be granted. That question turns on whether the Supreme Court of Missouri's new Rule 24.035 which affords a state prisoner an available postconviction remedy for only a period of 90 days, "precludes federal-court review" of a state prisoner's federal constitutional claims.[2]

Second, whether in light of the Missouri Constitution's prohibition against the sus-

---

**1.** Respondent argues that "[p]etitioner's failure to file a Missouri Supreme Court Rule 24.035 motion amounts to a default on his Missouri state-court remedies. Petitioner cannot now file a Rule 24.035 motion. *See,* Rule 24.035(1). Because petitioner cannot now file a Rule 24.035 motion, his default creates an adequate and independent state procedural bar to relief which precludes federal-court review of his claims.

*See, Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)." Doc. # 3 at 2.

**2.** New Rule 24.035(b) provides in part that: "The motion shall be filed within ninety days after the movant is delivered to the custody of the department of corrections. Failure to file a motion within the time provided by this Rule 24.035 shall constitute a complete waiver of any

pension of the writ of habeas corpus and its constitutional vesting of power in the Supreme Court of Missouri and the three Missouri Courts of Appeal to issue and determine original remedial writs, the petitioner nevertheless may have an available state postconviction remedy by way of State habeas corpus within the meaning of 28 U.S.C. § 2254(b) and (c) that must be exhausted before this Court exercises the habeas corpus conferred on it pursuant to 28 U.S.C. § 2254(a).[3]

## B.

We will discuss both those questions and state the reasons for the orders that will be entered in more than usual detail in accordance with the principles of comity and federalism that prompted the judges of this Court over twenty years ago to participate in a conference with the then Attorney General of Missouri and members of his staff on April 26, 1966 that had been scheduled through the good offices of the judges of the Supreme Court of Missouri and to

thereafter write and publish this Court's en banc opinion in *White v. Swenson*, 261 F.Supp. 42 (W.D.Mo 1966) (en banc), in November 1966.[4]

The first question as to whether the prayer of the response that "this Court dismiss this petition without further judicial proceedings" will be answered in the negative under the rationale of the recent opinion of the Court of Appeals for the Eighth Circuit in *Barks v. Armontrout*, 872 F.2d 237 (8th Cir.1989). Familiar principles of comity and federalism require that we enter an appropriate order under Rule 4 of the Rules governing Section 2254 Cases, 28 U.S.C. foll. § 2254, before we reach the second question.[5]

We turn now to the recent decision of the Court of Appeals in *Barks v. Armontrout.*

## II

### A.

The question presented to the Court of Appeals in *Barks* was whether the State

right to proceed under this Rule 24.035." New Rule 29.15(b) providing a postconviction remedy for persons convicted of a felony after trial contains an identical period of limitation.

3. Art. 1, § 12, Mo. Const., provides that "the privilege of the writ of habeas corpus shall never be suspended." Art. 5, § 4 Mo. Const., (as amended), provides that "[t]he supreme court and districts of the court of appeals may issue and determine original remedial writs." Habeas corpus was considered to be an original remedial writ within the meaning of a similar provision in Art. 5, § 4 of the 1945 Missouri Constitution before its amendment to eliminate the circuit courts from the scope of that constitutional provision. *See Wiglesworth v. Wyrick*, 531 S.W.2d 713 (Mo.Sup.1976) (en banc), in which the constitutionality of repealed Rule 27.-26 was affirmed.

4. Chief Judge Becker in his remarks at the Eighth Circuit Judicial Conference in July 1963, published under the title *Habeas Corpus and Post Conviction Review*, 33 F.R.D. 452 (1963), presented a detailed analysis of the Court's 1963 habeas trilogy and stated that "the answer [to the problem lay] in the willingness of states ... to provide adequate corrective process and collateral post-conviction remedies and to exercise them under the rules of *Noia*, and *Townsend* cases." *Id.* at 491. He stated in his conclusion that the "tasks imposed by these decisions must be performed by state and federal judges working together." *Id.* at 492.

In my remarks to the Ninth Circuit Judicial Conference in July 1967, published as *Postconviction Applications Viewed by a Federal Judge: Revisited*, 45 F.R.D. 199 (1968), I reported to that conference that the judges of the Supreme Court of Missouri and the judges of this Court had, in fact, "worked together" (*id.* at 209) and that in *Garton v. Swenson*, 266 F.Supp. 726, 728 (W.D.Mo.1967), our Court had stated that "Missouri's Amended Rule 27.26 represents the most enlightened postconviction procedure of any state with which we are familiar." *Id.* at 211. A copy of that rule was attached as an appendix to serve as a model for adoption in other states. *Id.* at 255. I stated that the "federal courts in Missouri are grateful that the Missouri State judiciary has [decided] to process postconviction proceedings the easy, rather than the hard way." *Id.* at 215.

5. Rule 4 of the Rules governing § 2254 Cases provides in its relevant part that unless "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, ... the judge shall order the respondent to file an answer or other pleading within the period of time fixed by the court *or to take such other action as the judge deems appropriate.*" (Emphasis added). The Advisory Committee Note explains that the authority "to take such other action as the judge deems appropriate" grants power to obtain information as to whether the "petitioner has failed to exhaust state remedies."

corrective process that Missouri made available to a state prisoner at the time he filed his petition for federal habeas corpus could, as the Attorney General of Missouri contended, be construed in a manner that would afford the state prisoner a State court evidentiary hearing and determination of his postconviction federal claims.

The Supreme Court of Missouri had, of course, construed its repealed Rule 27.26 in *Flowers v. State,* 618 S.W.2d 655 (Mo. banc 1981) (en banc), in a manner that did afford a state prisoner the right to file a second Rule 27.26 motion and thus obtain an evidentiary hearing of his federal claims in the courts of Missouri. A like construction of new Rule 29.15 would have, in the same manner, made Missouri's State corrective process available to a state prisoner at the time he filed his federal petition for habeas corpus. Under familiar exhaustion principles, the state prisoner would have been required to exhaust as required by 28 U.S.C. § 2254(b) and (c).

The Court of Appeals rejected the Attorney General of Missouri's exhaustion argument in *Barks* and remanded the case to the Eastern District of Missouri for further proceedings. The rationale of *Barks* requires that an order be entered denying the prayer of the respondent's response that this case be dismissed without further judicial proceedings in this Court.

### B.

The second question presented in this case, although closely related to the question decided in *Barks,* does not involve the construction of what a State contends is an adequate available State postconviction process. Rather, the Attorney General's preclusion argument presents the more fundamental question of whether Missouri, by its repeal of Rule 27.26, and its promulgation of new Rule 24.035, has completely eliminated *any* State postconviction procedure that may be said to have been available to the petitioner in this case at the time he filed his petition for habeas corpus invoking the jurisdiction conferred on this Court pursuant to 28 U.S.C. § 2254(a). For it is clear that the Attorney General con-

tends that if a state prisoner fails for any reason to file a Rule 24.035 motion within the 90–day statute of limitation period provided in that new rule, "his default creates an adequate and independent state procedural bar which precludes federal-court review of his claims." Doc. # 3 at 2.

Although *Barks* involved a relatively routine exhaustion question, it is important to note what the Court of Appeals said in that case in regard to how a federal court must consider the construction it must give to the new postconviction rules that the Supreme Court of Missouri promulgated to take the place of repealed Rule 27.26 that served as Missouri's State corrective process for over thirty-five years. The *Barks* court noted, for example, that it agreed with the state prisoner's argument that "under the plain language of Rule 29.15, *and in the absence of any Missouri Supreme Court ruling to the contrary,* the *state* courts would be precluded from giving any further consideration to his claims." (Emphasis added). 872 F.2d at 239.

Appropriate consideration must also be given to positions taken by the Attorney General of Missouri in regard to Missouri's new postconviction rules. For *Barks* noted that "the Attorney General takes the position that Rule 29.15 provides for absolutely no successive petitions." *Barks* accordingly held that until "the highest court of the state tells us otherwise, we have no reason not to heed the position of the Attorney General of the state." *Id.*

■ Federal courts are, of course, bound by the construction that the State courts give to their State corrective procedures. *Barks* recognized that familiar principle when it held that:

> If the Missouri Supreme Court determines that Rule 29.15 dictates a different result, we will be bound by such decision. Until then, we are convinced Barks's further attempts to seek redress in state court will be futile. Thus, we reverse the district court's dismissal without prejudice, and remand the case for the

district court to consider all of Barks's claims.[6]

*Id.*

## C.

It is clear that the Court of Appeals' decision in *Barks* was no more and no less than a consistent application of the doctrine of exhaustion that has been recognized and applied by the Supreme Court of the United States since at least the time *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), was decided over one hundred years ago. Appendix A is attached to this memorandum opinion in order to demonstrate that *Barks* was decided in a manner consistent with the Supreme Court of the United States most recent trilogy of state prisoner habeas corpus cases handed down February 22, 1989 and other recently decided exhaustion cases.

Consistent with *Barks'* admonition that positions stated by the Attorney General of Missouri should be given appropriate consideration in the construction of Missouri's new postconviction procedures, Appendix B is attached to this memorandum opinion in which we discuss the views publicly stated by John M. Morris, Chief Counsel for the Criminal Division of the Missouri Attorney General's Office, in regard to the Supreme Court of Missouri's repeal of Rule 27.26 and that court's promulgation of new Rule 24.035 and Rule 29.15.

It is important to note that Mr. Morris' article commenced with his discussion of the new rules with the statement that although the new rules "run somewhat counter to the past trend in Missouri of expanding postconviction remedies, *they represent no philosophical departure from current Rule 27.26...*." (Emphasis add-

ed). *Id.* at 435. Any interpretation of new Rule 24.035 consistent with the Attorney General's contention in this case that the Supreme Court of Missouri actually intended by its promulgation of its new postconviction rules to "preclude" federal court habeas corpus review of a state prisoner's federal constitutional claims would indeed be a radical "philosophical departure from [repealed] Rule 27.26."

The Court of Appeals also noted in *Barks* that the language of Missouri's new Rule 29.15(k) "mirrors the language" of one of the rules proposed by Chief Justice Donnelly in his dissent in *Flowers v. State,* 618 S.W.2d 655 (Mo. banc. 1981) (en banc). 872 F.2d at 239. Most significantly, *Barks* added that the "Attorney General has conceded that the *Flowers* decision was a factor in the revision of the rules."[7] *Id.*

Substantial controversy in regard to Missouri's available postconviction procedures was, of course, created by the proposals Chief Justice Donnelly made in 1981 in his *Flowers* dissent. The Supreme Court of Missouri has not stated the full extent that it accepted the rationale of Chief Justice Donnelly's proposals when it did, in fact, accept his proposal that Rule 27.26 should be repealed.

Appendix C is therefore attached to this memorandum opinion in which we discuss what Chief Justice Donnelly actually proposed and, more important, what he did not propose in his 1981 dissent in *Flowers* and in the two new rules that he proposed for adoption by the Supreme Court of Missouri.

Rule 27.26 was first promulgated in 1952 after the Supreme Court of the United States reversed the Supreme Court of Missouri outright in *Williams v. Kaiser,* 323

---

**6.** The Court of Appeals' reversal in *Barks* is consistent with its recent opinion in *Russell v. Armontrout,* No. 88–2310, decided May 12, 1989, in which it was stated: "On January 1, 1988, Missouri Supreme Court Rule 27.26 was abolished and replaced with Rule 29.15. Subsection (k) of the new rule prohibits successive motions. Accordingly, Russell has exhausted his state remedies." Slip op. at 3. The Court of Appeals concluded that it was not necessary for it to consider the Attorney General's *Wainwright v. Sykes* argument because the district court had

considered and had correctly decided the merits of the petitioner's federal claims. Further discussion of *Russell* would be redundant.

**7.** *Barks* also noted that "the Attorney General takes the position that Rule 29.15 provides for absolutely no successive petitions." *Barks* added that until "the highest court of the state tells us otherwise, we have no reason not to heed the position of the Attorney General of the state." *Id.* at 239.

U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945). *Williams v. Kaiser* will be discussed in detail in part IV to follow. Difficulties regarding the construction and application of Rule 27.26 in both its 1952 and 1967 form is discussed in Appendix D attached hereto.

### III

■ This Court should not reach the second question presented in this case until it is able to consider additional information that is not presently before this Court. An appropriate order accordingly will be entered pursuant to the Rules governing § 2254 Cases that will require the respondent to file a supplemental response which will require the Attorney General to state whether the petitioner may have had *any* available State postconviction remedy corrective process at the time he filed his petition for federal habeas corpus in this Court.

The information that will be furnished by the Attorney General may eventually force this Court to conclude that the courts of Missouri will not exercise the habeas corpus jurisdiction conferred by Art. V, § 4, Mo. Const. (as amended). The ultimate question that this Court might be forced to decide under such a circumstance would be a substantially different question from the question recently considered by the Court of Appeals in *Williams v. Lockhart*, 873 F.2d 1129 (8th Cir.1989). For that case involved a three-year statute of limitations provided in Ark.R.Crim.P. 37 rather than a 90–day statute of limitations as provided in new Rule 24.035.

■ Quite apart from the question of whether, under the Supreme Court of the United States decisions discussed in this memorandum opinion, a State has power to impose *any* statute of limitations on its State corrective process that could be said to preclude federal habeas review, we believe it obvious that a case involving Arkansas' three-year period of limitation presented an entirely different question than this case presents in regard to Missouri's 90–day period of limitation.[8]

A determination that Missouri presently fails to provide any "State corrective process" within the meaning of 28 U.S.C. § 2254(b) and that it presently fails to provide any other "available procedure" within the meaning of 28 U.S.C. § 2254(c) under which a state prisoner could have obtained a full and fair evidentiary hearing of his federal claims in some court of Missouri at the time he filed his petition for federal habeas corpus relief would present the Fourteenth Amendment question the Court refused to decide in *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965).[9] That precise question will be discussed in a later part of this memorandum opinion.

Rule 4 of the Rules governing Section 2254 Cases provides an appropriate procedure under which this Court may obtain additional information before it may be required to reach the second question presented by the response filed by the Attorney General in this case.

### IV

#### A.

In the event this Court is eventually required to find and conclude from the infor-

---

8. We, of course, fully agree with the Court of Appeals' holding in *Williams v. Lockhart* that while the question of what State corrective process is actually provided by a state is a "matter of state law," it is equally clear that the "ultimate question" of whether a procedural rule adopted by a state may properly be considered as "a bar to federal habeas corpus relief ... is [a question] of federal law." *Id.* at 1131.

9. The Court granted certiorari in *Case v. Nebraska* "to decide whether the Fourteenth Amendment requires that the States afford state prisoners some adequate corrective process for the hearing and determination of claims of viola-

tion of federal constitutional guarantees." *Id.* 381 U.S. at 337, 85 S.Ct. at 1487. The Court did not decide that question for the reason that after "certiorari was granted, the Nebraska Legislature enacted a statute providing a postconviction procedure [that] on its face provides for a hearing of petitions such as this one, alleging denial of federal constitutional rights." *Id.* The Court therefore ordered that the judgment of the Supreme Court of Nebraska be "vacated and the cause remanded to the Nebraska Supreme Court for reconsideration in light of the supervening statute." *Id.*

mation to be provided in the supplemental response to be filed by the Attorney General of Missouri that Missouri has decided to become the only State in the Union that refuses to provide any "available State corrective process" this Court would be required to reach the question the Court left open in *Case v. Nebraska.* The question of whether a State should be afforded an opportunity of establishing an adequate State corrective process by court rule or by statute is a substantially different question than the question of "whether the Fourteenth Amendment requires that the States afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees," for which certiorari was granted in *Case v. Nebraska.*[10] *Id.* at 337, 85 S.Ct. at 1487.

The Court has had no occasion to revisit the entirely different Fourteenth Amendment question it again left open in *Case v. Nebraska* because after the Court's decision in that case every State in the Union did, in the exercise of reasonably deliberate speed, adopt an adequate State procedure that would be available to a state prisoner seeking postconviction relief.[11]

Justice Clark, in order to focus the attention of the many states that had not provided adequate State postconviction procedures to the urgency of that situation, stated in his concurring opinion in *Case v. Nebraska* that:

It should be pointed out ... that as early as 1949 this Court in *Young v. Ragen,* 337 U.S. 235 [69 S.Ct. 1073, 93 L.Ed. 1333], articulated the principle that the States must afford prisoners some clearly defined method by which they may

raise claims of denial of federal rights. *Id.,* at 239 [69 S.Ct. at 1074].

381 U.S. at 337–38, 85 S.Ct. at 1487.

■ *Young v. Ragen* and the other Supreme Court cases to which we will make later reference establish that a finding that a particular State has in fact failed to provide *any* adequate corrective process for the hearing and determination of a state prisoner's federal constitutional claims must call for a remedy that would do much more than simply shift the duty of conducting evidentiary hearings from the state to the federal system.

The Court noted in *Young v. Ragen* that petitioner's State habeas petition contained "allegations which, if true, raise substantial questions under the due process clause of the Fourteenth Amendment." *Id.* 337 U.S. at 237, 69 S.Ct. at 1073. The Attorney General of Illinois argued in that case, not unlike the Attorney General of Missouri argued in *Barks,* that "certain statements in the Illinois Supreme Court's opinions [citing three Illinois cases], ... strongly indicate that habeas corpus would now be the appropriate Illinois procedure in a case such as the one before us." *Id.*

Chief Justice Vinson, speaking for a unanimous Court held that "it is not simply a question of state procedure when a state court of last resort closes the door to *any* consideration of a claim of denial of a federal right." *Id.* 337 U.S. at 238, 69 S.Ct. at 1074. The Court observed that unless State "habeas corpus is available, therefore, we are led to believe that Illinois offers no post-trial remedy in cases of this kind." *Id.* The Court accordingly held:

The doctrine of exhaustion of state remedies, to which this Court has required the scrupulous adherence of all federal

---

**10.** The Court, of course, disposed of *Case v. Nebraska* in the same manner that it disposed of *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), thirty years earlier. In both cases the States were afforded an opportunity of establishing and applying a State corrective process that would be available in all future state prisoner cases.

**11.** Justice Brennan observed in his 1965 concurring opinion in *Case v. Nebraska* that "adequate state procedures [were] presently all too scarce."

*Id.* 381 U.S. at 345, 85 S.Ct. at 1492. He stated in his footnote 8 that the "Uniform Post–Conviction Procedure Act, 9B Uniform Laws Ann. 352–359, designed to provide adjudication of federal claims, has had but slight influence in the States"; that "[s]ix States in addition to Nebraska [which] have adopted their own statutes" and added that "[p]rocedures have been adopted by rule of court in six States." *Id.* at 345, n. 8, 85 S.Ct. at 1492, n. 8, citing "Mo.Sup.Ct. Rule 27.-26" as one of those states.

courts, see *Ex parte Hawk*, 321 U.S. 114 [64 S.Ct. 448, 88 L.Ed. 572] and cases cited, *presupposes that some adequate state remedy exists*. We recognize the difficulties with which the Illinois Supreme Court is faced in adapting available state procedures to the requirement that prisoners be given some clearly defined method by which they may raise claims of denial of federal rights. *Nevertheless, that requirement must be met.* (Emphasis added).

*Id.* at 238–39, 69 S.Ct. at 1074–75.

The Court made clear in *Young v. Ragen* that it would not conclude that there was "no post-trial procedure [in Illinois] by which federal rights may be vindicated" unless and until the Court was "advised of that fact upon remand of this case." 337 U.S. at 239, 69 S.Ct. at 1075. More importantly, the Court stated forty years ago that a case involving a State's violation of the Fourteenth Amendment does not present a case to which the doctrine of exhaustion is to be applied.[12]

### B.

The Court's disposition of *Case v. Nebraska*, without deciding the Fourteenth Amendment question that this Court may or may not eventually be forced to decide, enabled the Court to avoid a decision on the petitioner's contention that "the Supremacy Clause and the fundamental Fourteenth Amendment right to a hearing constitutionally require the States to afford corrective judicial process to remedy federal constitutional defects in their criminal prosecu-

tions."[13] 381 U.S. at 343 n. 5, 85 S.Ct. at 1490 n. 5.

Detailed attention need only be given *Mooney v. Holohan*. For that case presented the factual situation in which the State of California, like the State of Missouri in this case, had a constitutional provision that expressly vested power in the Supreme Court of California to exercise habeas corpus jurisdiction.

*Mooney v. Holohan* pended on the Court's original jurisdiction docket on Mooney's motion for leave to file a petition for habeas corpus. Mooney's petition alleged a federal claim that "the State holds him in confinement without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States."[14]

Of paramount importance for purposes of this case, the Court stated that Mooney contended that California violated the Fourteenth Amendment by failing "to provide any corrective judicial process by which a conviction so obtained may be set aside." *Id.* The Court then stated that "the Attorney General urges that the State was not required to afford *any* corrective judicial process to remedy the alleged wrong." (Emphasis added). *Id.* 294 U.S. at 113, 55 S.Ct. at 342. The Court summarily rejected the Attorney General's argument, citing *Frank v. Mangum*, 237 U.S. 309, 335, 35 S.Ct. 582, 590, 59 L.Ed. 969 (1915), and *Moore v. Dempsey*, 261 U.S. 86, 90, 91, 43 S.Ct. 265, 266, 267, 67 L.Ed. 543 (1923).

The Court, however, did not grant Mooney leave to invoke the original habeas

---

**12.** Illinois, of course, did establish an available State postconviction remedy by statute shortly after *Young v. Ragen* was decided. Much the same thing happened in Nebraska. For the Nebraska Legislature, after certiorari was granted in *Case v. Nebraska*, enacted a State postconviction statute which, "[o]n its face, provides for a hearing of [state prisoner] petitions ... alleging denial of federal constitutional rights." 381 U.S. at 336, 85 S.Ct. at 1486.

**13.** Petitioner's counsel cited *Frank v. Mangum*, 237 U.S. 309, 335, 35 S.Ct. 582, 590, 59 L.Ed. 969; *Moore v. Dempsey*, 261 U.S. 86, 91, 43 S.Ct. 265, 266, 67 L.Ed. 543; *Mooney v. Holohan*, 294 U.S. 103, 113, 55 S.Ct. 340, 342, 79 L.Ed. 791; *New York ex rel. Whitman v. Wilson*, 318 U.S. 688, 690, 63 S.Ct. 840, 841, 87 L.Ed. 1083; *Carter*

*v. Illinois*, 329 U.S. 173, 175–76, 67 S.Ct. 216, 218–19, 91 L.Ed. 172; *Foster v. Illinois*, 332 U.S. 134, 139, 67 S.Ct. 1716, 1719, 91 L.Ed. 1955; *Taylor v. Alabama*, 335 U.S. 252, 272, 68 S.Ct. 1415, 1424, 92 L.Ed. 1935 (concurring opinion); and *Young v. Ragen*, 337 U.S. 235, 238–39, 69 S.Ct. 1073, 1074–75, 93 L.Ed. 1333, in support of that contention.

**14.** Mooney's petition specifically alleged that "the sole basis of his conviction was perjured testimony, which was knowingly used by the prosecuting authorities in order to obtain that conviction, and also that these authorities deliberately suppressed evidence which would have impeached and refuted the testimony thus given against him." 294 U.S. at 110, 55 S.Ct. at 341.

corpus jurisdiction of the Supreme Court of the United States. It refused to do so solely for the reason it was "not satisfied, ... that the State of California has failed to provide such corrective judicial process," specifically noting that under the Constitution of California, Art. I, § 5, and Art. VI, § 4, the "prerogative writ of *habeas corpus* is available in that State." 294 U.S. at 113, 55 S.Ct. at 342.

The Court accordingly held that it was thus "not at liberty to assume that the State has denied to its court jurisdiction to redress the prohibited wrong upon a proper showing and in an appropriate proceeding for that purpose." *Id.* While Mooney was denied leave to invoke the Court's original habeas corpus jurisdiction, that leave was denied "without prejudice." [15] *Id.* at 115, 55 S.Ct. at 343.

■ The order to be entered by this Court which will require the Attorney General to state whether habeas corpus is an available State postconviction remedy in Missouri is consistent with the rationale of *Mooney v. Holohan.* It must, of course, be recognized that should it become apparent that Missouri has failed to provide *any* adequate available State postconviction remedy, all federal courts are under duty to exercise federal habeas corpus jurisdiction and to "dispose of the case as law and justice requires." 28 U.S.C. § 2241.

■ Under such a circumstance, the Court has made clear that law and justice does not require a federal court to hold an evidentiary hearing before it grants a state prisoner federal habeas corpus relief. A State under such a circumstance is not entitled to be afforded another opportunity to remedy its Fourteenth Amendment violation by belatedly establishing a State corrective process.

The Court has held in a substantial number of cases that a state prisoner may be entitled to federal Fourteenth Amendment habeas corpus relief without an evidentiary hearing being conducted in either a State or a federal court. We need, however, to look only to the remedy the Court applied to the State of Missouri in 1945 when the Supreme Court of Missouri refused to grant a state prisoner a full and fair hearing of the federal claims alleged in his state petition for habeas corpus.

### C.

Particular attention will therefore be given *Williams v. Kaiser*, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945). In that case, the Court reversed the Supreme Court of Missouri outright for the reason that the original habeas corpus proceeding conducted in the Supreme Court of Missouri failed to accord the state prisoner a full and fair evidentiary hearing of his federal constitutional claim.[16]

The petitioner in *Williams v. Kaiser* was in custody under a 15–year sentence for armed robbery imposed on May 28, 1940 after trial. The Court noted that in "April, 1944, he filed a petition for a writ of *habeas corpus* in the Supreme Court of Missouri." 323 U.S. at 472, 65 S.Ct. at 364. That petition alleged in substance that the petitioner's request for appointment of counsel under Section 4003, R.S.Mo.1939, had been denied. The Court stated that "if

15. The Court explained why the denial was "without prejudice" by stating that:

We do not find that petitioner has applied to the state court for a writ of *habeas corpus* upon the grounds stated in his petition here. That corrective judicial process has not been invoked and it is not shown to be unavailable.... Orderly procedure, governed by principles we have repeatedly announced, requires that before this Court is asked to issue a writ of *habeas corpus*, in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy afforded by the State may still remain open. *Davis v. Burke*, 179 U.S. 399, 402 [21

S.Ct. 210, 211, 45 L.Ed. 249]; *Urquhart v. Brown*, 205 U.S. 179, 181, 182 [27 S.Ct. 459, 460, 51 L.Ed. 760]; *U.S. ex rel. Kennedy v. Tyler*, 269 U.S. 13, 17 [46 S.Ct. 1, 2, 70 L.Ed. 138].

*Id.*

16. The Supreme Court of Missouri was also reversed outright the same day in *Tomkins v. Missouri*, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407 (1945), a companion case to *Williams v. Kaiser*. *Tomkins v. Missouri* need not be discussed in any detail. For in that case the Court simply applied the principles it had stated in *Williams v. Kaiser*.

the allegations [of the petition] are taken as true, petitioner was denied due process of law" and that the "petition establishes on its face the deprivation of a federal right." [17]  *Id.* at 476, 478, 65 S.Ct. at 366, 367.

The Court noted that "Missouri does not claim that *habeas corpus* is not available in this type of case or that under Missouri law there is some procedure other than *habeas corpus* available to petitioner in which he may challenge the judgment of conviction on constitutional grounds." [18]  *Id.* at 477, 65 S.Ct. at 367.

The Court held that Missouri's denial of the state prisoner's right to an evidentiary hearing in the original habeas corpus proceeding conducted in the Supreme Court of Missouri required the outright reversal of that court with the result that the state prisoner was granted the habeas corpus relief prayed for in his state petition for habeas corpus. The allegations of the state prisoner's petition filed in the Supreme Court of Missouri were taken as true, and thus established a deprivation of the state prisoner's Fourteenth Amendment claim.

The Court concluded in *Williams v. Kaiser* "on the present state of the record before us, we do not see what more petitioner need do to establish the federal right on which his petition is based." [19]  *Id.* at 479, 65 S.Ct. at 368.

## D.

*Williams v. Kaiser* vividly illustrates the fundamental difference between the relief to which a state prisoner is entitled (1) in a case in which a State court improperly fails to conduct an evidentiary hearing in accordance with an available State postconviction corrective process which, on its face, entitles the prisoner to a full and fair evidentiary hearing in a State court and (2) a case in which a State has failed to provide *any* State postconviction process under which a state prisoner may obtain a State postconviction evidentiary hearing of his federal claims that is available to him at the time he files his petition for federal habeas corpus.

In the first type of case, the long-standing doctrine of exhaustion, codified in 28 U.S.C. § 2254(b) and (c), shifts the burden of conducting the evidentiary hearing to which the prisoner is entitled from the State court system to a federal district court sitting in that State. In the second type of case, however, involving a State's Fourteenth Amendment failure to provide *any* State corrective process that is available to a state prisoner at the time he files his petition for federal habeas corpus, the remedy, as would be expected, calls into play principles that are totally unrelated to the doctrine of exhaustion.

A failure to recognize the fundamental difference between the two types of cases would call for an application of the doctrine

**17.** The Court stated that the "Supreme Court of Missouri [denied] the petition for *habeas corpus* ... without requiring the State to answer or without giving petitioner an opportunity to prove his allegations." *Id.* at 473, 65 S.Ct. at 365. The Court also stated that the "Missouri Supreme Court did not indicate the reasons for its denial of the petition beyond the statement that the petition failed to state a cause of action." *Id.*

**18.** The Court emphasized that "Missouri has not suggested in the argument before this Court that it provides a remedy other than *habeas corpus* for release from a confinement under a judgment of conviction obtained as a result of an unconstitutional procedure." *Id.* at 473, 65 S.Ct. at 365. *Williams v. Kaiser* was, of course, decided seven years before Rule 27.26 was promulgated by the Supreme Court of Missouri in 1952.

**19.** The Supreme Court of Missouri thereafter recognized that it was bound by *Williams v. Kaiser* and had no apparent difficulty in conducting the required evidentiary hearing in an original habeas corpus proceeding in the Supreme Court of Missouri. *See Mackey v. Kaiser,* 187 S.W.2d 198 (Mo.Sup.1945) (en banc). It is clear that in *Mackey* the Supreme Court of Missouri had processed an earlier petition for habeas corpus filed by Mackey in the same manner that it had processed Williams' habeas corpus petition in April 1944. For the *Mackey* court explained that on "certiorari to the Supreme Court of the United States our judgment was vacated and the cause remanded to this court for further consideration in light of the decisions of that court in the cases of *Williams v. Kaiser,* 323 U.S. 471, 65 S.Ct. 363 [89 L.Ed. 398], and *Tomkins v. Missouri,* 323 U.S. 485, 65 S.Ct. 370 [89 L.Ed. 407]." *Id.*

of exhaustion to both types of cases with the unreasonable result that every State in the Union would have power to shift the burden of conducting all state prisoner postconviction evidentiary hearings from the State judicial systems to the federal district courts sitting in their respective states.[20] Recognition of such an assumed power would, of course, enable each of the States to deprive a state prisoner of access to the habeas corpus jurisdiction vested in all federal courts by the Congress for over a century.

The Fourteenth Amendment, Section 1, adopted after a tragic and bloody confrontation of federal and state power, has long provided that "... nor shall any State deprive any person of life, liberty, or property without due process of law." Section 5 of the Fourteenth Amendment provided that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

The Habeas Corpus Act of 1867 was enacted by the Congress pursuant to the power vested in it by Section 5 of the Fourteenth Amendment. It was therefore to be expected that a state prisoner's right of access to the habeas corpus jurisdiction vested in all federal courts by that Act would be enforced pursuant to the Fourteenth Amendment rather than by the doctrine of exhaustion which simply has no application to a case involving violation of that Amendment.

The reason the petitioner in *Williams v. Kaiser* was afforded federal habeas relief without having either a State or federal court evidentiary hearing was the result of the Court's enforcement of a state prisoner's due process rights as guaranteed by the Fourteenth Amendment.[21]

The Court's enforcement of a state prisoner's Fourteenth Amendment due process

right effectively eliminated any requirement of an evidentiary hearing of a state prisoner's federal postconviction claims in either a State or federal court.

The Court simply established the principle that the federal claims alleged in a state petition or motion for postconviction relief must be assumed to be true and that a State's Fourteenth Amendment violation must be held to be established if it is determined that a State has deprived the petitioner of access to a State court that would be able to hear and determine the federal claims, which if true, would entitle the state prisoner to federal habeas corpus relief.

### E.

The establishment of such an effective remedy for due process enforcement under the Fourteenth Amendment could hardly have reasonably come as a surprise to any State in the Union. For it would have been most unreasonable for any Northern, Southern, or Border State to assume that the same remedy that would be applied to a case to which the doctrine of exhaustion was applicable would be the same remedy that would be applied to a case in which a particular State had refused, in violation of the Due Process Clause of the Fourteenth Amendment, to provide a state prisoner with access to *any* available State corrective process under which he would be able to obtain an adequate State court hearing and determination of the postconviction federal claims alleged in his petition or motion for State postconviction relief.

### F.

■ It is, of course, true that the precise question for which the Court granted certiorari in *Case v. Nebraska,*—"whether the Fourteenth Amendment requires that the States afford state prisoners some ade-

---

20. Such a shift could be accomplished by the simple expedient of State action that would repeal all the State corrective postconviction processes that have been made available in every State in the Union after *Case v. Nebraska* was decided almost twenty-five years ago.

21. That enforcement was based on an entirely different ground than the enforcement of a state

prisoner's Sixth Amendment right to counsel that later would be recognized and enforced under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). For *Kaiser* was decided many years before those cases were decided.

quate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees" (381 U.S. at 337, 85 S.Ct. at 1487)—has yet to be decided by the Court. It is equally true, however, from what the Court has said over a period of almost fifty years in cases that have presented closely related questions, that when and if the Court is required to decide that precise question, it will answer it in the affirmative.[22]

It was almost fifty years ago that the Court stated in *Ex parte Hull*, 312 U.S. 546, 549, 61 S.Ct. 640, 642, 85 L.Ed. 1034 (1941), that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." In the same year that *Williams v. Kaiser* was decided, the Court stated in *House v. Mayo*, 324 U.S. 42, 45, 65 S.Ct. 517, 519, 89 L.Ed. 739 (1945), that if a State court denied a petition for habeas corpus without requiring the respondent to answer and without a hearing, "we must assume that the petitioner's allegations are true," citing *Williams v. Kaiser*, 323 U.S.

471, 473–474, 65 S.Ct. 363, 365, 89 L.Ed. 398. Later in the same year, the Court stated the same thing in *White v. Ragen*, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945).[23]

*White v. Ragen* also noted that it "has come to the attention of this Court that for some years the warden of the Illinois State Penitentiary, contrary to *Ex parte Hull*, 312 U.S. 546 [61 S.Ct. 640, 85 L.Ed. 1034], denied the rights of prisoners to *access to the courts* unless they procured counsel to represent them."[24] (Emphasis added). 324 U.S. at 762 n. 1, 65 S.Ct. at 980 n. 1. The Court was still having difficulty with the State of Illinois ten years later when *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), was decided in 1956. The Court held in that leading case that a defendant in a state criminal case had a right of access to a State appellate court under both the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[25] *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), was decided twelve years after *Griffin*.

---

22. It has been also twenty-five years ago that I stated to the ABA National Conference of State Trial Judges that "I know of no competent person who has studied the precise question presented in Case v. State of Nebraska with an open mind who would even dream of suggesting that either the present or any future Supreme Court of the United States will fail to answer the question posed in that case in the affirmative." *Postconviction Applications Viewed by a Federal Judge*, 39 F.R.D. at 283. The apparent failure on my part to indicate an appropriate degree of fallibility must be viewed in light of the circumstances under which that statement was made. For I was urging the State court judges in attendance at that national meeting to follow the exemplary manner in which the Supreme Court of Missouri had construed and applied its Rule 27.26, as promulgated in 1952, in order that a direct confrontation of the State and federal courts in their respective States could be avoided.

23. *White v. Ragen* held that "[s]ince the Supreme Court of Illinois dismissed both petitions without requiring respondent to answer, we must assume that the petitioners' allegations are true. *Williams v. Kaiser*, 323 U.S. 471, 473–474 [65 S.Ct. 363, 365, 89 L.Ed. 398]; *House v. Mayo*, 324 U.S. 42 [65 S.Ct. 517, 89 L.Ed. 739]." 324 U.S. at 763, 65 S.Ct. at 980. As Justice Clark noted in his concurring opinion in *Case v. Nebraska*, Illinois was the "'sore spot' in the Na-

tion" at the time *White v. Ragen* was decided in 1945. 381 U.S. at 340, 85 S.Ct. at 1488.

24. The Court used *White v. Ragen* as a vehicle to "indicate authoritatively for [the] guidance [of the federal district courts] the view we take of the availability of the state remedies...." *Id.* 324 U.S. at 765, 65 S.Ct. at 981. The Court stated that "whenever the Illinois Supreme Court denies a petition for the writ originally filed in that court, without opinion or other indication of the ground of its decision, and when the petition relies on allegations of fact to raise federal questions, it is unnecessary for the petitioner, in order to exhaust his state remedies, to apply to this Court for certiorari to review the judgment of the Supreme Court of Illinois." *Id.* at 767, 65 S.Ct. at 982. That direction to the federal district courts reflected the Court's recognition that the doctrine of exhaustion was not to be applied in a case in which a State had failed to provide *any* available state postconviction remedy.

25. In regard to the Due Process Clause, it was held that: "All of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to a correct adjudication of guilt or innocence. Statistics show that a substantial proportion of criminal convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose

The Court held that "it is fundamental that *access* of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." [26] (Emphasis added). *Id.* at 485, 89 S.Ct. at 749.

In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), decided in 1977, the Court held that:

> It is now established beyond doubt that *prisoners have a constitutional right of access to the courts.* This Court recognized that right more than 35 years ago when it struck down a regulation prohibiting state prisoners from filing petitions for habeas corpus unless they were found " 'properly drawn' " by the " 'legal investigator' " for the parole board. *Ex parte Hull,* 312 U.S. 546 [61 S.Ct. 640, 85 L.Ed. 1034] (1941). We held this violated the principle that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus." *Id.,* at 549 [61 S.Ct. at 642]. See also *Cochran v. Kansas,* 316 U.S. 255 [62 S.Ct. 1068, 86 L.Ed. 1453] (1942).[27] (Emphasis added).

430 U.S. at 821–22, 97 S.Ct. at 1494–95.

*Bounds'* basic holding that "prisoners have a constitutional right of access to the courts" has never been questioned in any later decision of the Court. Neither *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), nor *Murray v. Giarratano,* — U.S. —, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989), presented an *access to the courts* question. Both cases presented the question of a prisoner's right of *access to counsel* in a State postconviction proceeding, a question the Court answered in the negative.

Chief Justice Rehnquist's plurality opinion in *Giarratano* simply concluded that the Fourth Circuit should be reversed in that case for the reason that its opinion "rests on a misreading of our decision in *Bounds v. Smith,* 430 U.S. 817 [97 S.Ct. 1491, 52 L.Ed.2d 72] (1977)." *Id.* — U.S. at —, 109 S.Ct. at 2767. That plurality opinion assumed that *Bounds* was correctly decided and stated that *Finley* held that "there was no federal constitutional right to *counsel* for indigent prisoners seeking state postconviction relief." (Emphasis added). *Id.* at —, 109 S.Ct. at 2769. The *Giarratano* plurality opinion simply concluded that there "is no consistency whatever between the holding of *Bounds* and the holding in *Finley*" (*id.* at —, 109 S.Ct. at 2772) for the reason that the "Court held in *Bounds* that a prisoner's 'right to access' to the *courts* required a state to furnish access to adequate law libraries in order that the prisoners might prepare petitions for judicial relief." (Emphasis added). *Id.* at —, 109 S.Ct. at 2771.

Justice O'Connor's concurring opinion in *Giarratano* appropriately recognized that "our decision in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), allows the States considerable discretion in assuring that those imprisoned in its jails obtain meaningful access to the *judicial process.*" (Emphasis added). *Id.* — U.S.

---

their life, liberty, or property because of unjust convictions which appellate courts would set aside." *Id.* 351 U.S. at 18–19, 76 S.Ct. at 590.

**26.** The Court cited *Ex parte Hull, supra; Griffin v. Illinois, supra; Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); and *Long v. District Court,* 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), to support its holding that "[t]here can be no doubt that Tennessee could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions. Here Tennessee has adopted a rule which, in the absence of any other source of assistance for such prisoners, effectively does just that." 393 U.S. at 487, 89 S.Ct. at 749.

**27.** *Bounds v. Smith* also noted that other "recent decisions have struck down restrictions and re-

quired remedial measures to insure that inmate access to the courts is adequate, effective, and meaningful" (*id.* 430 U.S. at 822, 97 S.Ct. at 1495), citing *Johnson v. Avery* and the cases cited in that case. In addition, the Court cited *Burns v. Ohio,* 360 U.S. 252, 257, 79 S.Ct. 1164, 1168, 3 L.Ed.2d 1209 (1959), and *Wolff v. McDonnell,* 418 U.S. 539, 577–580, 94 S.Ct. 2963, 2985–2986, 41 L.Ed.2d 935 (1974), in its text and cited and discussed nine additional access to court cases in footnote 8 430 U.S. at 822 of its opinion, 109 S.Ct. at 1495, n. 8. *Bounds v. Smith* added that in *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) "the Court reaffirmed that States must 'assure the indigent defendant an adequate opportunity to present his claims fairly.' ... '[M]eaningful access' to the courts is the touchstone. See *id.,* at 611, 612, 615 [94 S.Ct. at 2444, 2445, 2446]." 430 U.S. at 823, 97 S.Ct. at 1495.

at ——, 109 S.Ct. at 2772. Justice Kennedy's opinion concurring in the judgment also recognized that the "requirement of *meaningful access* can be satisfied in various ways ... was made explicit in our decision in *Bounds v. Smith,* 430 U.S. 817 [97 S.Ct. 1491, 52 L.Ed.2d 72] (1977)." (Emphasis added). *Id.* at ——, 109 S.Ct. at 2773.

Justice Stevens' dissenting opinion, joined by Justices Brennan, Marshall, and Blackmun, expressed the view that "[f]ar from creating a discrete constitutional right, *Bounds* constitutes one part of a jurisprudence that encompasses 'right-to-counsel' as well as 'access-to-courts' cases." [28] *Id.* at ——, 109 S.Ct. at 2774.

■ Thus from the time *Ex parte Hull* was decided in 1941, the Court has made clear for almost fifty years that a "state and its officers may not abridge or impair a petitioner's right to apply to a federal court for a writ of habeas corpus." 312 U.S. at 549, 61 S.Ct. at 642. Those cases establish that the constitutional prohibition against a State's efforts to deprive a state prisoner from access to a federal court's habeas corpus jurisdiction is grounded on the Due Process Clause of the Fourteenth Amendment.

The failure of a State to provide *any* State corrective process calls for a Fourteenth Amendment remedy—a remedy that is an entirely different remedy than that which is to be applied to a State court's failure to construe and apply an available State corrective process, which, on its face, permits meaningful access to the courts of a particular State for the hearing and determination of a state prisoner's federal postconviction claims.[29]

## V

A draft of this memorandum opinion and the appendices attached thereto was briefly circulated among the active and senior Judges of this Court who have the duty of processing the numerous state prisoner habeas corpus cases because I am confident that all consider this a question of great seriousness. Judge Sachs has suggested, and I agree, that respondent should address the question of whether State habeas corpus is an available State remedy for prisoner claims of violation of federal constitutional rights which were allegedly not known to the prisoner during the short period relief is afforded under Rules 24.035 and 29.15. Judge Sachs notes that the Missouri rules call for a motion setting forth all *known* claims and acknowledging waiver of *known* claims that are not included. He further notes that Judge Donnelly's dissent in *Flowers* also seemed to be directed toward requiring very prompt presentation of known claims.

Judge Sachs finds no explicit or implicit limitation on presenting late-discovered claims to some court other than the sen-

28. The four dissenting Justices were of the view that "[m]eaningful access, and meaningful judicial review, would be effected in this case only if counsel were appointed, on request, in time to enable examination of the case record, factual investigation, and preparation of a petition containing all meritorious claims, which the same attorney then could litigate to its conclusion." *Id.* at ——, 109 S.Ct. at 2781.

29. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), extended the access to court rationale of *Griffin v. Illinois* to civil as well as criminal cases. Justice Harlan, writing for the Court, concluded that "the rationale of *Griffin* covers this case." 401 U.S. at 382, 91 S.Ct. at 788. Justice Douglas, concurring in result, agreed that "this case should be decided upon the principles developed in the line of cases marked by *Griffin v. Illinois.*" *Id.* at 383, 91 S.Ct. at 789. Justice Black's dissent in *Boddie* was based solely on the ground that, in his view, there were strong reasons why the rule in criminal cases should not be applied in "the quite different field of civil cases." *Id.* at 390, 91 S.Ct. at 792. He did not, however, in any way retreat from his opinion in *Griffin.* Indeed, he stated that if the Court had not decided *Griffin* as it did, "we would have been unfaithful to the explicit commands of the Bill of Rights, designed to wrap the protections of the Constitution around all defendants upon whom the mighty powers of government are hurled to punish for crime." *Id.* at 391, 91 S.Ct. at 793. Justice Black added that the Constitution was written by "wise men who sought ... to protect the people from governmental harassment and oppression, who feared alike the king and the king's judges" and that a failure to place a due process requirement on the "unbounded authority in any group of politically appointed or elected judges would unquestionably be sufficient to classify our Nation as a government of men, not the government of laws of which we boast." *Id.* at 393, 91 S.Ct. at 794.

tencing court and requests a reasoned explanation of the views of the Attorney General on how such claims are to be presented and, if there is a claim of preclusion, how such preclusion could be justified under the Missouri Constitution and the United States Constitution.

It has also been suggested that it should be added that the Judges of this Court would be happy to attend any conference in Jefferson City, Missouri which may be convened through the good offices of the Chief Justice and Judges of the Supreme Court of Missouri that might serve a purpose similar to the purpose served at the conference convened in the same manner before this Court wrote and published its Court en banc opinion over twenty years ago in *White v. Swenson*, 261 F.Supp. 42 (W.D. Mo.1966) (en banc).

We therefore find and conclude in accordance with Rule 4 that it does not plainly appear from the face of petitioner's petition that the petitioner may not be entitled to federal habeas corpus relief. We further find and conclude that it is appropriate that this Court should enter an order requiring the Attorney General to file a supplemental response which will throw further light on the interpretation that should be placed on Rule 24.035.

## VI

For the reasons stated, it is

ORDERED (1) that the prayer of the respondent's response that this Court dismiss the pending petition for federal habeas corpus relief without further judicial proceedings should be and the same is hereby denied. It is further

ORDERED (2) that the respondent shall on or before July 24, 1989, prepare, serve, and file a supplemental response to this Court's order to show cause which shall include, but not be limited to the following:

(a) The supplemental response shall be directed to the merits of the federal Sixth Amendment ineffective assistance of counsel claims alleged in the pending petition.

(b) A copy of the transcript of petitioner's plea of guilty which the Attorney General stated he would endeavor to file with the Court shall be attached as an exhibit to the supplemental response, together with all other State court materials relevant to the determination of the merits of the petition, all in accordance with Rule 7 of the Rules governing Section 2254 cases.[30]

(c) In accordance with Rule 4 of the Rules governing Section 2254 Cases, the supplemental response shall include in a separate part thereof, a particularized statement as to whether petitioner had any available postconviction State corrective process or procedure within the meaning of 28 U.S.C. § 2254(b) and (c) at the time petitioner filed his petition for federal habeas corpus which the petitioner should be required to exhaust before this Court should exercise the habeas corpus jurisdiction conferred by the Congress pursuant to 28 U.S.C. § 2254(a).

(d) The supplemental response shall also address the question suggested by Judge Sachs in part V of this memorandum opinion in a separate part of the supplemental response to be filed. It is further

ORDERED (3) that the time within which respondent's supplemental response is to be filed may be extended for a reasonable period of time for good cause established by a motion filed before July 21, 1989.

## APPENDIX A

*BARKS* IS CONSISTENT WITH THE COURT'S MOST RECENT STATE PRISONER HABEAS TRILOGY AND OTHER RECENT EXHAUSTION CASES

### I

The Court of Appeals' decision in *Barks* is consistent with the recent trilogy of

---

**30.** After a draft of this memorandum opinion was being considered by the other Judges of this Court, the Attorney General forwarded to the Clerk of this Court a copy of the transcript of the proceeding at which the petitioner's guilty plea was accepted. That transcript, which was filed in the Circuit Court of Saline County, Missouri on June 23, 1988, however, failed to include the exhibits adduced in evidence at the hearing. The Attorney General shall therefore attach copies of all exhibits adduced in evidence at that hearing to the supplemental response.

state prisoner habeas corpus cases decided by the Supreme Court on February 22, 1989. In *Castille v. Peoples,* — U.S. —, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989), one of the rare unanimous opinions of the Court in this difficult and complex area of the law, the Court granted certiorari "to consider whether the presentation of claims to a State's highest court on discretionary review, without more, satisfies the exhaustion requirements of 28 U.S.C. § 2254." *Id.* 109 S.Ct. at 1059. Justice Scalia, writing for a unanimous court, quoted 28 U.S.C. § 2254(c) and stated that: "Read narrowly, this language appears to preclude a finding of exhaustion if there exists any possibility of further state court review." *Id.*

The Court held, however, that:

We have, however, expressly rejected such a construction, *Brown v. Allen,* 344 U.S. 443, 448–449, n. 3 [73 S.Ct. 397, 402–403, n. 3, 97 L.Ed. 469] (1953), holding instead that once the state courts have ruled upon a claim, it is not necessary for a petitioner "to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review." *Id.,* at 447 [73 S.Ct. at 402]. This interpretation reconciles § 2254(c) with § 2254(b), which provides that federal habeas review will lie where state corrective processes are "ineffective to protect the rights of the prisoner." It would be inconsistent with the latter provision, as well as with underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined, or permanently to bar from federal habeas prisoners in States whose postconviction procedures are technically inexhaustible.

*Id.*

*Castille* therefore concluded that a state prisoner habeas petitioner must be considered to have exhausted his available State postconviction remedies "if it is clear that respondent's claims are now procedurally barred under Pennsylvania law. See, *e.g., Engle v. Isaac,* 456 U.S. 107, 125–126 n. 28, [102 S.Ct. 1558, 1570–1571 n. 28, 71 L.Ed.2d 783] (1982); *Teague v. Lane,* [—] U.S. [—], [—] [109 S.Ct. 1060, 1068, 103 L.Ed.2d 334] (1989)."

*Castille*'s citation of footnote 28 in *Engle v. Isaac,* is most significant. For that footnote makes clear that the question presented in regard to the impact of a State procedural default that might occur *at the trial of a criminal case* is an entirely separate and different question than that presented in regard to whether a petitioner may be said to have an available State court process within the meaning of Section 2254(b) that must be exhausted. *Engle v. Isaac*'s footnote 28 stated the following:

As we recognized in *Sykes,* 433 U.S., at 78–79 [97 S.Ct. at 2502], the problem of waiver is separate from the question whether a state prisoner has exhausted state remedies. Section 2254(b) requires habeas applicants to exhaust those remedies "available in the courts of the State." *This requirement, however, refers only to remedies still available at the time of the federal petition.* See *Humphrey v. Cady,* 405 U.S. [504], at 516 [92 S.Ct. 1048 at 1055, 31 L.Ed.2d 394]; *Fay v. Noia,* 372 U.S. 391, 435 [83 S.Ct. 822, 847, 9 L.Ed.2d 837] (1963). (Emphasis added).

456 U.S. at 125–26, 102 S.Ct. at 1570–71.

Footnote 28 then observed that the available postconviction remedies provided by Ohio law "provides only limited collateral review of convictions; prisoners may not raise claims that could have been litigated before judgment or on direct appeal." *Id.* at 126, 102 S.Ct. at 1571. The Court concluded that for that reason "we agree with the lower courts that state collateral relief is unavailable to respondents and, therefore, that they have exhausted their state remedies with respect to this claim." *Id.*

Although a divided Court erected still another barrier for state prisoner habeas petitioners in *Teague v. Lane,* — U.S. —, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), *reh'g denied,* — U.S. —, 109 S.Ct. 1771, 104 L.Ed.2d 206, Justice Stevens' concurring opinion in the judgment of

that case, joined by Justice Blackmun, stated that "[i]t is true that 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' *Harris v. Reed,* [——] U.S. [——], [——], n. 9 [109 S.Ct. 1038, 1043, n. 9, 103 L.Ed.2d 308] (1989) (citing *Castille v. Peoples,* [——] U.S. [——], [109 S.Ct. 1056, 103 L.Ed.2d 380] (1989); *ante,* at [109 S.Ct. at 1067–1068])." *Id.* 109 S.Ct. at 1083.

*Harris v. Reed,* —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), cited in *Teague,* presented the question of whether "the 'plain statement' rule of *Michigan v. Long,* 463 U.S. 1032, 1042, and n. 7 [103 S.Ct. 3469, 3477, and n. 7, 77 L.Ed.2d 1201] (1983) applies in a case on federal habeas review as well as in a case on direct review in this Court." *Id.* 109 S.Ct. at 1040. The Court answered that question in the affirmative. *Harris* thus made clear that a State "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar. *Caldwell* [*v. Mississippi*], 472 U.S. [320], at 327 [105 S.Ct. 2633 at 2638, 86 L.Ed.2d 231], quoting *Long,* 463 U.S., at 1041 [103 S.Ct. at 3476]." [1] *Id.* 109 S.Ct. at 1043.

In footnote 9 supporting that conclusion the Court cited Section 2254(b) and flatly stated that "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred. *Castille v. Peoples,* [——] U.S. [——], [109 S.Ct. 1056, 1060, 103 L.Ed.2d 380] (1989); *Teague v. Lane,* [——] U.S. [——], [——, 109 S.Ct. 1060, 1067–1068, 103 L.Ed.2d 334] (1989) (plurality opinion)." *Id.*

## II

The Court of Appeals' decision in *Barks v. Armontrout* is, of course, also consistent with other recent Supreme Court decisions construing the long-standing exhaustion doctrine codified by the Congress in Section 2254(b) and (c) in 1948. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), in which the Court held that:

> The exhaustion doctrine existed long before its codification by Congress in 1948. In *Ex parte Royall,* 117 U.S. 241, 251 [6 S.Ct. 734, 740, 29 L.Ed. 868] (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.
>
> ....
>
> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. See *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490–491 [93 S.Ct. 1123, 1127–1128, 35 L.Ed.2d 443] (1973). Under our federal system, the federal and state "courts [are] equally bound to guard and protect rights secured by the Constitution." *Ex parte Royall,* 117 U.S., at 251 [6 S.Ct. at 740].

455 U.S. at 515, 518, 102 S.Ct. at 1201, 1203.

*See also Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984), in which the Court held that: "We agree with the Court of Appeals that the exhaustion rule requiring dismissal of mixed petitions, though to be strictly enforced, is not jurisdictional. See *Rose v. Lundy,* 455 U.S., at 515–520 [102 S.Ct. at 1201–1204]." And see finally, *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), in which the Court again considered Section 2254(b) and held

---

**1.** It should be obvious that when a clerk of a Missouri circuit court refuses to file an untimely new Rule 24.035 motion pursuant to the 90-day statute of limitations included in that rule, that action cannot properly be considered as a statement of "the last state court rendering a

judgment in the case" within the meaning of *Harris v. Reed.* The clerk's refusal to file an untimely Rule 24.035 simply reflects his compliance with a rule promulgated by the Supreme Court of Missouri.

that: "The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary. *Rose v. Lundy,* 455 U.S. 509, 515 [102 S.Ct. 1198, 1201, 71 L.Ed.2d 379] (1982)." 474 U.S. at 257, 106 S.Ct. at 620.

### III

In light of the Attorney General of Missouri's contention that a State, by promulgation of a rule of court, has power to impose a 90–day statute of limitations on federal habeas corpus actions, it is appropriate that *Vasquez* be given more detailed attention. The Court's opinion in *Vasquez* is particularly important for the reason that under the factual circumstances of that case the petitioner, over a 16–year period of time, unsuccessfully "pursued appeals and collateral relief in the state courts, raising at every opportunity his equal protection challenge to the grand jury that indicted him." *Id.* at 256, 106 S.Ct. at 619.

The Court noted that "after the California Supreme Court foreclosed his final avenue of state relief in 1978, respondent filed a petition for a writ of habeas corpus in federal court, raising that same challenge." *Id.* The District Court granted the writ; the Ninth Circuit affirmed; and the Supreme Court affirmed the Ninth Circuit.

In part IV of the majority opinion in *Vasquez,* the Court stated that the dissenting opinion of Justice Powell, joined by Chief Justice Burger and Justice Rehnquist, "propounds a theory, not advanced by any party, which would condition the grant of relief upon the passage of time between a conviction and the filing of a petition for federal habeas corpus, depending upon the ability of a State to obtain a second conviction." *Id.* at 264, 106 S.Ct. at 624.

The Court rejected the proposal made in Justice Powell's dissent by holding that "Congress has not seen fit ... to provide the State with an additional defense to habeas corpus petitions based on the difficulties that it will face if forced to retry the defendant." *Id.* at 265, 106 S.Ct. at 624. The Court significantly added that "despite many attempts in recent years, Congress has yet to create a statute of limitations for federal habeas corpus actions." *Id.* The Court therefore concluded that it "should not lightly create a new judicial rule, in the guise of constitutional interpretation, to achieve the same end."[2] *Id.*

*Vasquez* thus reflects the firm refusal of the Supreme Court of the United States to create, by judicial fiat, a statute of limitations for federal habeas corpus actions. If the Supreme Court of the United States does not believe that it has power, by judicial fiat, to create a statute of limitations for federal habeas corpus actions, it is indeed difficult to conceive that the Court would ever hold that a Supreme Court of a State could do so.

### APPENDIX B

### DISCUSSION OF VIEWS PUBLICLY STATED BY THE MISSOURI ATTORNEY GENERAL'S OFFICE IN REGARD TO THE COURT'S ALLEGED "REPUDIATION" OF *FAY V. NOIA*

### I

The response filed by the Attorney General in this case did not state any reason in support of the respondent's contention that the Supreme Court of Missouri's repeal of its former Rule 27.26 and its promulgation of new Rule 24.035, could somehow "preclude federal-court review of [petitioner's Sixth Amendment] claims." The response simply cites *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), without making any statement of what that case may have held.

---

**2.** Justice O'Conner, who has not been loath to erect procedural barriers in federal habeas corpus cases, stated in her opinion concurring in the judgment of the Court, that "[b]ecause I am not convinced that a sufficiently compelling case has been made for reversing this Court's precedents with respect to the remedy applicable to properly cognizable claims of discriminatory exclusion of grand jurors, I concur in the judgment of the Court." *Id.* at 267, 106 S.Ct. at 625.

John M. Morris, Chief Counsel of the Criminal Division in the Missouri Attorney General's Office, in an article entitled *Postconviction Practice Under "New Rule 27.-26"*, 43 Journal of the Missouri Bar 435 (Oct.–Nov.1987), did express the views of a member of the Missouri Attorney General's Office in regard to *Wainwright v. Sykes*.

It is appropriate, in the absence of any other statement by a member of the Attorney General's Office, to examine the view of the Chief Counsel of the Criminal Division of that office. For the preclusion contention baldly stated in the response filed in this case is apparently based on the views expressed in the article published by the Chief Counsel of the Criminal Division of the Attorney General's Office.

Mr. Morris' article purported to summarize the Supreme Court of the United States' 1963 landmark habeas corpus trilogy of *Townsend v. Sain, Fay v. Noia,* and *Sanders v. United States* by stating the two essential points conveyed by these decisions were "(1) that an inmate's procedural default of a state remedy ... would not prevent federal habeas corpus review on the merits unless the state could prove that the inmate's bypass of the state remedy was 'deliberate'; and (2) that if the state courts did not provide the inmate with a full and fair hearing on the merits of his claims for whatever reason, that function would be taken over the federal courts in habeas corpus." Mo.Bar J. at 436.

Mr. Morris then stated that "two factors have combined to warrant a review and revision of Rule 27.26." *Id.* The first factor stated by Mr. Morris, which need not be given detailed consideration, was that "although it has undoubtedly encouraged state-court resolution of inmates' factual claims, Rule 27.26 has been anything but an unalloyed benefit to the criminal justice system." *Id.* Mr. Morris then stated that the "second factor in the reconsideration of Rule 27.26 is the *repudiation* by the Unit-

ed States Supreme Court of the 'deliberate bypass' doctrine of *Fay v. Noia,* discussed above." (Emphasis added). *Id.* at 437.[1]

Mr. Morris' view of the Court's "repudiation" of what he labeled as the "deliberate bypass" doctrine of *Fay v. Noia* was based on a citation of *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); and *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Mr. Morris did not say anything about what he believed those cases held. Nor did he state any reason to support his view that those decisions reflected a "repeated" acknowledgment on the part of the Supreme Court of the United States that "states are legitimately entitled to require that challenges to criminal convictions be *timely* and properly raised in their courts." (Emphasis added). Mo.Bar J. at 437.

Mr. Morris did, however, state his view that if a State should place a 90–day statute of limitations on the availability of its State postconviction procedures, that the failure of a state prisoner to file a State postconviction motion within that limited period of time would effectively preclude an evidentiary hearing in federal court and, more important, preclude federal court habeas corpus consideration of any federal constitutional claims that a state prisoner might subsequently allege in a federal habeas corpus petition.

Mr. Morris accurately stated that "[o]ne of the most crucial changes in the new rules is the limitation upon when a postconviction motion can be filed." *Id.* Then, after directing attention to the 90–day statute of limitations provided in new Rule 24.035(d) and in new Rule 29.15(b), Mr. Morris stated that if a state prisoner fails to file his postconviction motion within the 90–day period of limitation, he will "have committed a procedural default which

---

**1.** Mr. Morris, of course, had not earlier discussed his view of what he called "the 'deliberate bypass' doctrine of *Fay v. Noia.*" He had only stated, without directing attention to any-

thing stated in the Court's opinion in that case, what he believed were the "two essential points conveyed" by the 1963 habeas corpus trilogy.

would bar subsequent review in federal habeas corpus." *Id.* at 438.

## II

The views expressed by Mr. Morris in regard to what he considered were the "two essential points conveyed" by the 1963 habeas corpus trilogy completely failed to recognize what *Townsend v. Sain* and *Fay v. Noia* actually held. Those cases construed the congressional intent of the Judiciary Act of 1867, presently codified as 28 U.S.C. § 2254, that expanded federal court habeas corpus jurisdiction to include persons being held in State custody under judgments allegedly obtained in violation of the Constitution and laws of the United States.

Those cases held that Congress intended by the Act of 1867 to provide that state prisoners who properly invoke federal habeas corpus jurisdiction presently codified in 28 U.S.C. § 2254(a), are entitled to a full and fair plenary evidentiary hearing of their federal constitutional claims to be held in either a State or federal court. Most importantly, *Townsend v. Sain* established the standard under which a federal district court has a mandatory duty to conduct such an evidentiary hearing in the event the state prisoner had not been afforded a full and fair hearing of his federal claims in a State court.

The first sentence in *Townsend v. Sain* stated that the Court would consider a petitioner's *"right* to a plenary hearing in federal habeas corpus." 372 U.S. 293 at 295, 83 S.Ct. 745 at 748, 9 L.Ed.2d 770 (1963). (Emphasis added). Certiorari was granted "to determine whether the courts below had correctly determined and applied the standards governing hearings in federal habeas corpus." *Id.* at 297, 83 S.Ct. at 749.

The familiar standard under which it is mandatory that a federal court exercise its power and jurisdiction to conduct the evidentiary hearing is stated as follows in *Townsend v. Sain* as follows:

> Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding.

372 U.S. at 312, 83 S.Ct. at 757.

*Townsend v. Sain*'s articulation of the standard under which a state prisoner is entitled to an evidentiary hearing in a federal district court was not in any way questioned in Justice Stewart's dissenting opinion in that case. Justice Stewart expressly stated that "I have no quarrel with the Court's statement of the basic governing principle which should determine whether a hearing is to be had in a federal habeas corpus proceeding." *Id.* at 326, 83 S.Ct. at 764.

Nor has that fundamental principle been questioned in any later Supreme Court opinion, including *Wainwright v. Sykes* and the progeny of that case.

## III

Of equal, if not of greater importance for purposes of this case, *Fay v. Noia* made clear that questions concerning the application of the doctrine of exhaustion of State court remedies, presently codified in 28 U.S.C. § 2254(b) and (c), should not be confused with the question of whether a state prisoner has a right to an evidentiary hearing of his federal claims in federal court under the jurisdiction vested in a federal court by 28 U.S.C. § 2254(a).[2]

The State of New York, quite naturally argued in *Fay v. Noia* that the district

---

**2.** The articulation of that principle in *Fay v. Noia* was expressly incorporated by reference as a part of *Townsend v. Sain* (see 372 U.S. at 310–11, 83 S.Ct. at 755–56). As will be later discussed in detail, that principle has never been questioned in any subsequent opinion of the Supreme Court, including but not limited to *Wainwright v. Sykes.* As will be noted in the text to follow, *Fay v. Noia* affirmed the Second

Circuit's reversal of the district court's dismissal of Noia's habeas corpus petition on exhaustion grounds. While the Court affirmed the Second Circuit's reversal of the district court, it rejected the Second Circuit exhaustion rationale and expressly stated that its affirmance was based on an entirely "different course of reasoning." 372 U.S. at 398, 83 S.Ct. at 827.

court had properly dismissed the state prisoner's federal petition for habeas corpus on exhaustion grounds and that the Second Circuit's decision to the contrary should be reversed. That argument was firmly rejected by the Supreme Court.

The first sentence in *Fay v. Noia* stated that this "case presents important questions touching the federal habeas corpus jurisdiction, 28 U.S.C. §§ 2241 *et seq.*, in its relation to state criminal justice." 372 U.S. at 394, 83 S.Ct. at 825. The second sentence made clear that the "narrow question is whether the respondent Noia may be granted federal habeas corpus relief ... after he was denied state post-conviction relief because the coerced confession claim [alleged in his federal habeas corpus petition] had been decided against him at the trial and Noia had allowed the time for a direct appeal to lapse without seeking review by a state appellate court." *Id.*

It is obvious that if the Court had held in *Fay v. Noia* that the district court had properly dismissed the federal habeas corpus petition on exhaustion grounds, the petitioner would have effectively been denied an evidentiary hearing of the federal claim alleged in his federal habeas petition in both the State and the federal court. *Fay v. Noia* refused to accept New York's exhaustion argument.

The second of the three principal holdings of *Fay v. Noia* was summarized early in the Court's lengthy opinion in that case when the Court held that:

> Noia's failure to appeal was not a failure to exhaust "the remedies available in the courts of the State" as required by § 2254; that requirement refers only to a failure to exhaust state remedies *still open to the applicant at the time he files his application for habeas corpus in the federal court.* (Emphasis added).

*Id.* at 399, 83 S.Ct. at 827.

Later in its opinion, the Court explained its second basic holding by first stating

that the "doctrine requiring the exhaustion of state remedies is now codified in 28 U.S.C. § 2254."[3] *Id.* at 419, 83 S.Ct. at 838. *Fay v. Noia* then explained that the doctrine of exhaustion has always been based solely on principles of comity and, as such, did no more than establish a "rule of timing" under which, as a matter of comity, the State courts would be afforded the first opportunity to consider a state prisoner's federal claims before a federal court should exercise the habeas corpus power and jurisdiction conferred on it by 28 U.S.C. § 2254(a). *Id.* at 420, 83 S.Ct. at 839.

The Court noted, however, that the "rule of timing," based as it was on a rule of comity, may not properly be considered as a "rule circumscribing the power of the federal courts." *Id.* For if the exhaustion doctrine codified in 28 U.S.C. § 2254(b) and (c) were to be so construed, the Court explained, such a construction would necessarily be "in defiance of unmistakable congressional intent" expressed in 28 U.S.C. § 2254(a). *Id.*

In its determination of "the historical accommodation that has been worked out between the state and federal courts respecting the administration of federal habeas corpus," the Court took as its "starting point ... the Judiciary Act of February 5, 1867, *c* 28, § 1, 14 Stat. 385–386, which first extended federal habeas corpus to state prisoners generally, and which survives, except for some changes in wording, in the present statutory codification." *Id.* at 415, 83 S.Ct. at 836. The Court made a detailed review of "the language and purpose of the Act of February 5, 1867, and the course of decisions in this Court extending over nearly a century" (*id.* at 426, 83 S.Ct. at 842) and therefore concluded that:

> Congress in 1867 sought to provide a federal forum for state prisoners having constitutional defenses by extending the habeas corpus powers of the federal

---

**3.** Title 28 U.S.C. § 2254(b) and (c) were quoted in footnote 29 appended to that statement. *Id.* That footnote explained that those sections were "added in the revision of the Judicial Code in 1948" and that the "Reviser's Note reads: 'This

new section is declaratory of existing law as affirmed by the Supreme Court. (See *Ex parte Hawk*, ... 321 U.S. 114 [64 S.Ct. 448, 88 L.Ed. 572]....)'" *Id.* at n. 29.

courts to their constitutional maximum. Obedient to this purpose, we have consistently held that federal court jurisdiction is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings. *State procedural rules plainly must yield to this overriding federal policy.* (Emphasis added).

*Id.* at 426–27, 83 S.Ct. at 842.

The Court thus reiterated its earlier conclusion that 28 U.S.C. § 2254(b) and (c) were "enacted to codify the judicially evolved rule of exhaustion, particularly as formulated in *Ex parte Hawk,* 321 U.S. 114 [64 S.Ct. 448, 88 L.Ed. 572]" merely for the purpose of establishing "a rule ordering the state and federal proceedings so as to eliminate unnecessary federal-state friction." *Id.* 372 U.S. at 435, 83 S.Ct. at 847. The Court accordingly held that:

> There is thus no warrant for attributing to Congress, in the teeth of the language of § 2254, intent to work a radical innovation in the law of habeas corpus. We hold that § 2254 is limited in its application to failure to exhaust state remedies *still open to the habeas applicant at the time he files his application in federal court.*" (Emphasis added).

*Id.*

As it was important to note that Justice Stewart, in his *Townsend v. Sain* dissent stated his agreement with the controlling standard stated by the majority in that case, it is equally important to note that Justice Harlan, in his dissenting opinion in *Fay v. Noia,* stated his agreement with the majority opinion's rejection of the State of New York's contention that the exhaustion doctrine codified in 28 U.S.C. § 2254(b) and (c) embodied a doctrine of forfeitures under which a State had power to deny a state prisoner his right to a postconviction evidentiary hearing or to preclude the exercise

of federal habeas corpus jurisdiction by the establishment of a State procedural rule that would either limit or entirely eliminate the availability of its State postconviction process. Justice Harlan stated in his dissent that:

> Analysis of the problem in terms of exhaustion of remedies no longer available has been severely criticized. Hart, *supra,* note 1, at 112–114. This "exhaustion" approach is today quite properly interred. *Ante,* pp. 434–435.

*Id.* 372 U.S. at 462 n. 19, 83 S.Ct. at 861 n. 19.

It is thus clear that the view expressed by Mr. Morris in regard to what the Court held in *Townsend v. Sain* and in *Fay v. Noia* was based on an untenable reading of those cases. Indeed, the view expressed by Mr. Morris was, in substance, merely a reiteration of the exhaustion contention made by New York that was expressly rejected by both the majority and dissenting opinions in *Fay v. Noia.*

### IV

Mr. Morris' notion that the Court, in *Wainwright v. Sykes* or in any of the other cases cited in his article, has in fact "repudiated" that basic holding of *Fay v. Noia* is equally untenable.

*Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), the first case cited by Mr. Morris, did not in any way overrule *Fay v. Noia.* Indeed, that case recognized that there "can be no question of a federal district court's power to entertain an application for a writ of habeas corpus in a case such as this. 28 U.S.C. §§ 2241, 2254." Indeed, the Court in *Francis v. Henderson* added that this "Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of it habeas corpus power. See *Fay v. Noia,* 372 U.S. 391, 425–426 [83 S.Ct. 822, 842–43, 9 L.Ed.2d 837]." 425 U.S. at 538, 539, 96 S.Ct. at 1709, 1710.[4]

---

4. *Francis v. Henderson* did, of course, hold that the cause and prejudice rule of *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), applicable in a Section 2255 federal court challenge to the validity of a grand jury

indictment "applies with equal force when a federal court is asked in a habeas corpus proceeding to overturn a state-court conviction because of an allegedly unconstitutional grand jury indictment." 425 U.S. at 542, 96 S.Ct. at

## V

*Wainwright v. Sykes* did not in any way question the construction given 28 U.S.C. § 2254(a) in *Townsend v. Sain.* Nor did *Wainwright v. Sykes* in any way question *Fay v. Noia*'s basic holding that the doctrine of exhaustion codified in 28 U.S.C. § 2254(b) and (c) may not be considered as vesting power in a State to deprive a state prisoner of his right to a full and fair evidentiary hearing of his federal postconviction claim.

Justice, now Chief Justice Rehnquist, noted early in his *Wainwright v. Sykes'* majority opinion that for "more than a century since the 1867 amendment, this Court has grappled with the relationship between the classical common-law writ of habeas corpus and the remedy provided in 28 U.S.C. § 2254." 433 U.S. at 78, 97 S.Ct. at 2502. He then stated that:

Where the habeas petitioner challenges a final judgment of conviction rendered by a state court, this Court has been called upon to decide no fewer than four different questions, all to a degree interrelated with one another: (1) What types of federal claims may a federal habeas court properly consider? (2) Where a federal claim is cognizable by a federal habeas court, to what extent must that court defer to a resolution of the claim in prior state proceedings? (3) To what extent must the petitioner who seeks federal habeas exhaust state remedies before resorting to the federal court? (4) In what instances will an adequate and independent state ground bar consideration of otherwise cognizable federal issues on federal habeas review?

*Id.* at 78–79, 97 S.Ct. at 2502.

In its brief discussion of the first three questions the Court stated in regard to question (1) that over the years "the rule

laid down in *Ex parte Watkins,* [3 Pet. 193, 7 L.Ed. 650 (1830) ] was gradually changed by judicial decisions expanding the availability of habeas relief beyond attacks focused narrowly on the jurisdiction of the sentencing court." *Id.* at 79, 97 S.Ct. at 2502. In regard to question (2) the Court noted that in *"Brown v. Allen,* 344 U.S. 443 [73 S.Ct. 397, 97 L.Ed. 469] (1953), it was made explicit that a state prisoner's challenge to the trial court's resolution of dispositive federal issues is always fair game on federal habeas" (*id.*) and that the "duty of the federal habeas court to hold a factfinding hearing in specific situations, notwithstanding the prior resolution of the issues in state court, was thoroughly explored in this Court's later decision in *Townsend v. Sain,* 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963)." *Id.* at 80, 97 S.Ct. at 2503.

In regard to question (3) the Court noted that the "exhaustion-of-state-remedies requirement was first articulated by this Court in the case of *Ex parte Royall,* 117 U.S. 241 [6 S.Ct. 734, 29 L.Ed. 868] (1886)," in which the Court stated that "while there was power in the federal courts to entertain such petitions, as a matter of comity they should usually stay their hand pending consideration of the issue in the normal course of the state trial." *Id.* The Court added that this rule "has been incorporated into the language of § 2254" and quoted 28 U.S.C. § 2254(b) and (c) in footnote 7 on page 80 of 433 U.S.[5] *Id.*

*Sykes* then turned to question (4) and noted that the "area of controversy which has developed [in regard to that question] has concerned the reviewability of federal claims which the state court has declined to pass on because not presented in the manner prescribed by its *procedural* rules." (The Court's emphasis). *Id.* at 81–82, 97 S.Ct. at 2504. It was then noted that in 1953 the Court had concluded in *Brown v.*

1711. It is thus clear that *Francis v. Henderson* recognized rather than repudiated the basic holding of *Fay v. Noia.*

**5.** The Court also noted that the cases of *Ex parte Hawk,* 321 U.S. 114, 116–117, 64 S.Ct. 448, 88 L.Ed. 572 (1944); *Darr v. Burford,* 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950); *Irvin v. Dowd,*

359 U.S. 394, 405–406, 79 S.Ct. 825, 831–832, 3 L.Ed.2d 900 (1959); *Fay v. Noia,* 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963), had also considered exhaustion question (3). No complaint whatsoever was stated in regard to the manner in which *Fay v. Noia* had construed 28 U.S.C. § 2254(b) and (c).

*Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), that the failure of a state prisoner's lawyer to file petitioner's appeal before the expiration of the time provided by North Carolina law precluded federal habeas corpus review of petitioner's federal constitutional claim. *Sykes* recognized, however, that the Court had expressly overruled *Brown v. Allen* in *Fay v. Noia.*

Indeed, *Sykes* quoted with approval *Fay v. Noia's* express holding at 372 U.S. at 399, 83 S.Ct. at 827, that the " 'doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute.' 372 U.S. at 399 [83 S.Ct. at 827]." *Id.* at 82–83, 97 S.Ct. at 2504.

*Sykes* directed particular attention to *Fay v. Noia's* holding that a federal judge had a limited discretion to deny federal habeas corpus relief to a state prisoner "who had deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *Id.* at 83, 97 S.Ct. at 2504 (quoting *Fay v. Noia,* 372 U.S. at 438, 83 S.Ct. at 849).[6]

*Sykes* simply held that a by-pass could be established by a failure to comply with a State's contemporaneous objection rule *at the trial* of a criminal case and that the cause and prejudice standard of waiver established in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), and *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), should be applied to a challenge to the admission of a confession at the State trial of a criminal case.[7]

*Sykes* noted that "Florida procedure did, consistently with the United States Constitution, require that respondent's confession be challenged *at trial or not at all.*" (Emphasis added). *Id.* at 86, 97 S.Ct. at 2506. *Sykes,* in the final analysis, did no more and no less than conclude that "the dicta of *Fay v. Noia*" must not be considered as having "laid down an all-inclusive rule rendering state contemporaneous-objection rules ineffective to bar review of underlying federal claims in federal habeas proceedings" (*id.* at 85, 97 S.Ct. at 2505) and that a failure at trial to comply with such a rule could, absent a showing of cause and prejudice, be considered as a waiver of a petitioner's postconviction claim.

## VI

The Court has made clear in subsequent cases that *Sykes* did not in any way overrule the basic holding of *Fay v. Noia* in regard to 28 U.S.C. § 2254(b) and (c). Those cases establish that *Sykes* merely rejected the exclusive standard of waiver articulated in the *dicta* of that case. Those cases also make clear that the additional standard of waiver articulated in *Sykes* did not in any way suggest that the principles relating to a prisoner's right to an evidentiary hearing in either the State or in a federal court as articulated in *Townsend v. Sain* was in any way modified or overruled.

*Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), for example, flatly stated that the Court "recognized in *Sykes,* 433 U.S., at 78–79 [97 S.Ct. at 2502] [that] the problem of waiver is separate from the question whether a state prisoner has exhausted state remedies." *Id.* at 125–26 n. 28, 102 S.Ct. at 1570 n. 28. The *Engle v. Isaac* court, citing both *Fay v. Noia* and *Humphrey v. Cady,* 405 U.S.

---

**6.** *Fay v. Noia* had, of course, by way of dicta, and only by way of dicta, adopted the familiar standard of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), that in order to establish a by-pass by a state prisoner, the State was required to establish "an intentional relinquishment or abandonment of a known right or privilege" by the petitioner.

**7.** *Sykes* stated that "the crux" of that case was whether "the rule of *Francis v. Henderson, supra,* barring federal habeas review absent a showing of 'cause' and 'prejudice' attendant to a state procedural waiver, be applied to a waived objection to the admission of a confession at trial?" *Id.* at 87, 97 S.Ct. at 2506. The Court simply answered that question in the affirmative. *Sykes* did not come close to suggesting that *Fay v. Noia* was being overruled.

504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), also noted that "Section 2254(b) requires habeas applicants to exhaust those remedies 'available in the courts of the State.'" *Id.*

In *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), a case cited in Mr. Morris' article, the Court cited both *Francis v. Henderson* and *Fay v. Noia* to support its holding that the Court's "decisions have uniformly acknowledged that federal courts are empowered under 28 U.S.C. § 2254 to look beyond a state procedural forfeiture and entertain a state prisoner's contention that his constitutional rights have been violated." *Id.* at 9, 104 S.Ct. at 2907.

And in *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643, 91 L.Ed.2d 397 (1986), also cited by Mr. Morris, the Court again made clear what had been held in *Sykes* by stating that: "*Wainwright v. Sykes* held that a federal habeas petitioner who has failed to comply with a State's contemporaneous-objection rule *at trial* must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim." (Emphasis added).[8]

Justice Stevens' opinion concurring in the judgment of *Murray v. Carrier* accurately noted the continuing force of the basic principles established by *Fay v. Noia*'s construction of 28 U.S.C. § 2254(a). Justice Stevens pointed out that *Fay v. Noia,* decided in 1963, expressly overruled *Daniels v. Allen,* 344 U.S. 443, 73 S.Ct. 437, 97 L.Ed. 469 (1953), decided 10 years earlier, noting that "the view of the *Daniels* Court on the propriety of federal habeas proceedings after a procedural default was repudiated in *Fay v. Noia,* 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963)." He added that while "certain dicta [in *Fay v. Noia* ] has been qualified by later opinions," the Court

restated the "three propositions of law [in that case] that have not thereafter been questioned." *Id.* at 510, 106 S.Ct. at 2657.

Justice Stevens accurately stated in his concurring opinion in *Murray v. Carrier* that:

> The propositions that *Noia* firmly established are these: First, the *power* of the federal district court to issue the writ of habeas corpus survives an adverse decision by a state court, whether the state judgment is based on a review of the merits of the federal claim or on the applicant's procedural default. Second, although a State's interest in orderly appellate procedure justifies a denial of appellate review *in the state system* when the inadvertence or neglect of defense counsel causes a procedural default, that state interest is not sufficient to bar a federal remedy in appropriate cases. Third, as the converse of the second proposition, *Noia* also holds that the federal district court has discretion to deny relief based on state procedural defaults in appropriate cases. None of these propositions has been questioned in any subsequent case. (Justice Stevens' emphasis).

*Id.* at 510–12, 106 S.Ct. at 2657–58.

Justice Stevens accurately identified the dicta of *Fay v. Noia* that had been qualified by *Sykes.* He stated in that regard that the "dicta in the *Noia* opinion that has been questioned was an attempt to prescribe a rather rigid limitation on the District Court's discretion to deny habeas corpus relief based on the applicant's procedural default." He added that the "breadth of that dicta was ultimately disavowed in *Wainwright v. Sykes,* 433 U.S., at 87–88 [97 S.Ct. at 2506–2507], but the Court has remained faithful to the specific holding in *Noia* ... as well as to the basic principles announced in that opinion." [9] *Id.* at 512–13, 106 S.Ct. at 2658.

---

**8.** The Court in *Murray v. Carrier* also defined the scope of *Engle v. Isaac* by stating that: "We revisited the cause and prejudice test in *Engle v. Isaac,* 456 U.S. 107 [102 S.Ct. 1558, 71 L.Ed.2d 783] (1982). Like *Wainwright v. Sykes, Engle* involved claims that were procedurally default-ed *at trial.*" (Emphasis added). *Id.* 477 U.S. at 486, 106 S.Ct. at 2644.

**9.** Justice Stevens also accurately stated that in *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the Court had relied on *Fay v. Noia* when the Court "reaffirmed that the feder-

## VII

The bottom line of an accurate analysis of *Sykes* and the progeny of that case requires the appropriate recognition that the line of Supreme Court of the United States cases construing 28 U.S.C. § 2254(a) did not in any way purport to overrule, or to "repudiate" the basic principles and standards articulated in *Townsend v. Sain* and *Fay v. Noia*. A failure to recognize the fundamental principles established by the Supreme Court of the United States in those cases could lead to unanticipated problems that would tend to disrupt the orderly administration of criminal justice in both the State and federal courts.

The view expressed by the Chief Counsel of the Criminal Division of the Missouri Attorney General's Office in regard to the Court's "repudiation" of *Fay v. Noia* is an untenable view.

## APPENDIX C

## DETAILED DISCUSSION OF CHIEF JUSTICE DONNELLY'S *FLOWERS* DISSENT AND HIS TWO PROPOSED NEW RULES

### I

It is not necessary for present purposes that we discuss the many instances in which both the form and substance of Missouri's two new postconviction rules mirror the two new rules proposed by Chief Justice Donnelly in his *Flowers* dissent. It is

of paramount importance, however, that attention be focused on the fact that Chief Justice Donnelly proposed that habeas corpus should be the exclusive postconviction procedure under which a Missouri court would have jurisdiction to consider a state prisoner's federal constitutional claims.[1]

Chief Justice Donnelly proposed that the provision in Rule 27.26 which provided that a "prisoner in custody under sentence and claiming a right to be released on the ground that such sentence was imposed *in violation of the Constitution and Laws* of ... *the United States* ... may file a motion *at any time* in the court which imposed such to vacate, set aside, or correct the same" should be completely eliminated from both of the two new rules he proposed for adoption. *See* 618 S.W.2d at 659 and 661.[2]

Chief Justice Donnelly, however, in apparent recognition of the Missouri Constitution's prohibition in Art. I, § 12 against the suspension of the writ of habeas corpus, stated in his dissent that "[o]f course, a person restrained of his liberty within Missouri in violation of the Constitution of the United States or the Constitution of Missouri may prosecute a writ of *habeas corpus*." *Id.* at 658. The two new rules proposed by Chief Justice Donnelly therefore reflected his view that he "would limit the assertion of violations of the Constitution of the United States to *direct appeals* and *habeas corpus*."[3] (Chief Justice Donnelly's emphasis). *Id.*

---

al court has power to look beyond the state procedural default and entertain the state prisoner's application for a writ of habeas corpus." 477 U.S. at 513, 106 S.Ct. at 2659. Justice Stevens quoted with emphasis the portion of *Reed* which stated that: *"This Court has never held, however, that finality, standing alone, provides a sufficient reason for federal courts to compromise their protection of constitutional rights under § 2254." Id.* at 514, 106 S.Ct. at 2659.

**1.** Chief Justice Donnelly proposed that Rule 27.-26 be repealed in its entirety. *See* 618 S.W.2d at 658. That proposal was, of course, accepted. Rule 27.26 was repealed, effective January 1, 1988.

**2.** For reasons which were not explained, Chief Justice Donnelly also proposed that a separate rule be promulgated which would provide only for "defendant under sentence for a felony who

claims the judgment and sentence imposed *after trial* violate the Constitution and Laws of this State" and a separate motion based on the same State ground be promulgated which would be available to "a person under sentence for a felony *after a plea of guilty."* (Chief Justice Donnelly's emphasis). *Id.* at 658 and 661, respectively. The proposal that separate rules be promulgated for persons convicted "after trial" and those convicted on a "plea of guilty" and the proposal that each rule would be available only for a person "under a sentence for a felony" were accepted when new Rule 24.035 and new Rule 29.15 were promulgated.

**3.** That language cannot reasonably be construed as a proposal that a state prisoner should be permitted to file a federal petition for habeas corpus without the necessity of first being required to exhaust his *federal* claims by way of State habeas corpus. For it is obvious that a

Chief Justice Donnelly's proposal that habeas corpus would and should provide Missouri's exclusive State corrective process must be assumed to have been based on his familiarity with the fact that the Supreme Court of Missouri had, in fact, exercised the original habeas corpus jurisdiction conferred on that court by Art. V, § 4, Missouri Constitution, both before and after Rule 27.26 had been amended in 1967.[4] It would violate every principle of comity for this Court to assume that it even entered Chief Justice Donnelly's mind that acceptance of his proposal that Rule 27.26 be repealed would somehow also repeal Art. V, § 4 of the Missouri Constitution.

Nor would it be permissible for this Court to assume that Chief Justice Donnelly could have possibly believed that acceptance of his proposal that habeas corpus should be the exclusive State corrective process under which a state prisoner would be able to obtain a State court evidentiary hearing of his federal postconviction constitutional claims could somehow repeal the Habeas Corpus Act of 1867, presently codified as 28 U.S.C. § 2254. Every principle of comity simply forbids any federal court from assuming that any member of a State appellate court would for a moment entertain the notion that a State supreme court had power, by the simple promulgation of a rule of court, to repeal any act of Congress of the United States.[5]

## II

Comity requires that this Court must assume that Chief Justice Donnelly was familiar with the fact that habeas corpus,

under the narrow construction that the Supreme Court of Missouri had given Rule 27.26, was in fact, the only available State corrective process for prisoners asserting federal claims that the Supreme Court of Missouri had held to be outside the scope of that rule. Cases presenting a prisoner's federal claim that his probation or parole was revoked in violation of the constitutional standards articulated in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), provide familiar examples.

In *Moore v. Stamps*, 507 S.W.2d 939 (Mo.App.1974), the Missouri Court of Appeals, St. Louis District, noted that its jurisdiction over the petitioner's "petition for an original writ of habeas corpus" in a revocation case was being entertained pursuant to "Mo. Const. Art. V, § 4, V.A.M.S." *Id.* at 941.

The Supreme Court of Missouri, for further example, commenced its opinion in *Sincup v. Blackwell*, 608 S.W.2d 389 (Mo. Sup.1980) (en banc), with the statement that "habeas corpus ... is available to challenge the validity of parole or probation revocation proceedings resulting in incarceration, ... and this Court has jurisdiction of the cause under Mo. Const., Art. V, § 4." *Id.* at 391. *Sincup v. Blackwell* cited the Supreme Court of Missouri's landmark probation revocation case of *Abel v. Wyrick*, 574 S.W.2d 411 (Mo.Sup.1978) (en banc). Comity requires that this Court must assume that Chief Justice Donnelly had that habeas corpus case in mind when he proposed that all of a state prisoner's federal claims should be processed in a

---

state prisoner could not file a "direct appeal" to any federal court.

4. Indeed, Chief Justice Donnelly was a member of the Supreme Court of Missouri in 1968 when this Court was forced to grant federal habeas corpus relief in *Goodwin v. Swenson*, 287 F.Supp. 166 (W.D.Mo.1968), in a case in which the state prisoner was accorded an evidentiary hearing in an original habeas corpus proceeding conducted in the Supreme Court of Missouri and thus exhausted an available State postconviction remedy.

5. It would further be impossible for this Court to assume that Chief Justice Donnelly believed that the acceptance of any of his proposals would somehow make Missouri the only State in the Union that would fail to provide *any* State postconviction corrective process under which a state prisoner's federal constitutional claims could be heard and considered by a State court before that prisoner would be able to invoke, without any exhaustion whatsoever, the habeas corpus jurisdiction conferred on a federal court by Section 2254(a).

State habeas corpus proceeding rather than under either of his new proposed rules.[6]

The Attorney General, as usual, argued in *Abel v. Wyrick* that the Supreme Court of Missouri should not reach the merits of the petitioner's federal claim. The Attorney General presented the untenable argument that *"Wiglesworth v. Wyrick*, 531 S.W.2d 713 (Mo. banc 1976), [held] that rule 27.26 does not unconstitutionally suspend the writ of habeas corpus." *Id.*[7]

*Abel v. Wyrick* recognized, of course, that *"Wiglesworth* did hold that rule 27.26 ... does not suspend the writ of habeas corpus." *Id.* at 416. The *Abel* court, however, expressly rejected the Attorney General's argument that the petitioner could not invoke the Supreme Court of Missouri's original habeas corpus jurisdiction. Of particular importance for purposes of this case, was the further holding in *Abel v. Wyrick* that the obvious inconvenience of an appellate court conducting an evidentiary hearing in a habeas corpus case "in which there is a dispute as to a factual issue" may easily be avoided by the utilization of existing available Missouri procedures. *Abel v. Wyrick* held that:

> In a case in which factual issues are in dispute, this court may refer the matter to a circuit court for determination of fact issues or may appoint a master who will hold a hearing on the evidentiary

questions and, in either event, the findings can then be certified to this court. *Id.*

This Court may not properly assume that Chief Justice Donnelly did not have a State habeas corpus proceeding in mind when he proposed that a state prisoner's *State* postconviction claims be processed under his two proposed new rules and that a state prisoner's *federal* postconviction constitutional claims be processed on direct appeal or in a habeas corpus proceeding.

### III

It is clear that there is no federal constitutional barrier that would prevent a State from utilizing one of its trial courts or a special master to assist a State appellate court's processing of a habeas corpus case, as suggested in *Abel v. Wyrick*. For Rule 8(b)(1) and (4) of the Rules governing Section 2254 Cases vests power in a federal district court processing a habeas corpus case to follow such a reference procedure to assist in the resolution of disputed questions of fact in substantially the same manner *Abel v. Wyrick* held such procedures were available to a Missouri appellate court in its conduct of a State habeas corpus proceedings.[8]

While acceptance of Chief Justice Donnelly's basic proposal may have substantially increased the habeas corpus burden on

---

6. *Abel v. Wyrick* noted that the "petitioner filed a *pro se* petition for a writ of habeas corpus *in this court*" and that "a preliminary writ issued *from this court.*" (Emphasis added). 574 S.W.2d at 415.

7. It has long been an unfathomable mystery to this Court why the Attorney Generals of Missouri, past and present, have apparently believed that the presentation of arguments to bar the consideration of the merits of federal postconviction claims in both the courts of Missouri and in the federal courts conserves either the time of the Attorney General's office or the judicial time of either the state or federal courts. We recently commented on the similar practice of the present Attorney General's failure to cite the controlling cases of the Supreme Court of the United States in the briefs filed in the appellate courts of Missouri in cases presenting federal constitutional questions. *See Mountjoy v. Jones*, 708 F.Supp. 1540 (W.D.Mo.1989). *See also Fisher v. Trickey*, 656 F.Supp. 797 (W.D.Mo.

1987), in which this Court was forced to consider and reject the obviously untenable exhaustion argument presented by the Attorney General which was based on the notion that this Court was not under duty to follow the Court of Appeals' controlling decision in *Powell v. Wyrick*, 657 F.2d 222 (8th Cir.1981).

8. Rule 8(b)(1) and Rule (4) of the Rules governing § 2254 Cases provide that "(1) When designated to do so in accordance with 28 U.S.C. § 636(b), a magistrate may conduct hearings, including evidentiary hearings, on the motion, and submit to a judge of the court proposed findings of fact and recommendations for disposition.... (4) A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate."

the original jurisdiction vested in the appellate courts of Missouri, his proposal was in no way inconsistent with *Townsend v. Sain*'s requirement that a state prisoner is entitled to an evidentiary hearing in either the State or federal court.

Acceptance of Chief Justice Donnelly's two proposed new rules simply would have provided a State habeas corpus proceeding as Missouri's exclusive postconviction "State corrective process" for the hearing and determination of a prisoner's federal claims.

While the Supreme Court of Missouri accepted Chief Justice Donnelly's proposal that its former Rule 27.26 be repealed, it did not accept that portion of his proposal that a state prisoner's *federal* claims be processed in a State habeas corpus proceeding.

The question of whether the Supreme Court of Missouri somehow intended to suspend a state prisoner's right to present his federal postconviction claims in a State habeas corpus proceeding by its promulgation of its new Rule 24.035 and Rule 29.15 is a question that should not presently be reached for the reasons stated in the text of the memorandum opinion.

### IV

A further word need be added in regard to Chief Justice Donnelly's dissent in *Flowers*. For that dissent quoted a part of the sentence in Justice Clark's dissenting opinion in *Fay v. Noia*, 372 U.S. at 445, 83 S.Ct. at 852, in which Justice Clark spoke of the necessity of maintaining "the delicate balance of federalism so foremost in the minds of the Founding Fathers." 618 S.W.2d at 658. Chief Justice Donnelly then cited the Supreme Court of Missouri's 1969 divided en banc opinion in *State v. Brizen-*

*dine*, 445 S.W.2d 827 (Mo. banc 1969), to support his conclusion that the Supreme Court of Missouri's 1967 amendment of Rule 27.26 "proved to be an exercise in futility" (618 S.W.2d at 658) in regard to that court's attempt to preserve the "delicate balance of federalism" to which Justice Clark made reference in his *Fay v. Noia* dissent.

It is true, of course, that four of the Judges of the Supreme Court of Missouri concurred in a majority opinion written by Judge Donnelly in that 1969 case. Thus a clear majority of the Supreme Court of Missouri agreed that the opinion in *State v. Brizendine* should be "filed in the records of this Court because the people of Missouri are entitled to know that the effect of this statute, ... is to make this Court subservient to the *trial courts* of the Federal judicial system in cases involving violations of the criminal laws of this State." [9] (Chief Donnelly's emphasis). 445 S.W.2d at 828.

It must be again noted that Chief Justice Donnelly's *Flowers* dissent anticipated that a state prisoner's federal claims should be heard and determined in a State appellate court habeas corpus proceeding. *Williams v. Kaiser*, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945), and its companion case of *Tomkins v. Missouri*, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407 (1945), establish that review of a final decision of a Missouri appellate court denying habeas corpus relief of a state prisoner's federal claim would be by way of certiorari in the Supreme Court of the United States.

Thus, adoption of Chief Justice Donnelly's proposal in his *Flowers* dissent would have made the Supreme Court of Missouri "subservient," to use the language of the 1969 majority opinion in *State v. Brizendine*, to the Supreme Court of the United States rather than "to the trial courts of the Federal judicial system." [10] 445 S.W.2d at 828.

9. The "statute" to which the majority made reference was the 1966 Code revision of 28 U.S.C. § 2254. Judge Donnelly's majority opinion was based on the obvious erroneous basic premise that Congress had not vested habeas corpus jurisdiction in all federal courts until 28 U.S.C. § 2254 appeared in the 1966 revision of the Code rather than in 1867 when Congress passed the Habeas Corpus Act of 1867.

10. We must assume that the word "subservient" was used by the majority in *State v. Brizendine* in a colloquial rather than in a legal sense. For the Supremacy Clause, Art. V, Cl. 2, of the Constitution of the United States has provided for over two hundred years that the Judges of every State are bound by the Constitution and Laws of the United States, anything to the con-

## V

Comity requires that it should be noted that when the various Judges of the Supreme Court of Missouri wrote their opinions in *State v. Brizendine*, that court was required to rule an unprecedented motion filed *sua sponte* by the Attorney General of Missouri. The filing of that motion reflected a radical change in the position that the Attorney General's Office represented to this Court in regard to what action the State of Missouri would take after this Court had indicated that it would grant a conditional writ of habeas corpus in *Brizendine v. Swenson*, 302 F.Supp. 1011 (W.D. Mo.1969).

The final order entered by this Court in that case simply directed the "Office of the Attorney General shall keep this Court advised of any and all action *taken by the State of Missouri* in connection with this order...." *Id.* at 1022. That provision was added to this Court's final order granting a conditional writ of habeas corpus at the request of an Assistant Attorney General for the purpose of avoiding any procedural difficulties that the State might encounter on perfecting an appeal to the Eighth Circuit.

The Attorney General, of course, did not file the notice of appeal that he indicated to this Court would be filed. Instead, as Judge Seiler's opinion concurring in the result of *State v. Brizendine* accurately pointed out, "the attorney general filed with us a motion asking us to vacate our judgment." *Id.* at 829. The Attorney General of Missouri's apparent effort to provoke a direct confrontation between this Court and the Supreme Court of Missouri was defeated by the order entered by the Supreme Court of Missouri that reversed its prior order and remanded the case for a second trial in the circuit court.

This Court deeply regrets the confusion and obvious friction unnecessarily created by the Attorney General's change of mind and independent action. We hope that this explanation will make clear that this Court has never for a moment entertained the notion that federal habeas corpus jurisdiction conferred on all federal courts by the Habeas Corpus Act of 1867 in any way made the Supreme Court of Missouri, or indeed any other court of Missouri, "subservient to the *trial courts* of the Federal judicial system" as stated in Judge Donnelly's 1969 majority opinion in *State v. Brizendine.*

## VI

In his *Flowers* dissent, Chief Justice Donnelly stated that in "1964, Judge Hollingsworth of this Court sought to make our Rule 27.26 (as it then existed) effectual by requiring evidentiary hearings on motions to vacate sentences" (618 S.W.2d at 658) citing *State v. Pickel,* 376 S.W.2d 181 (Mo. Sup.1964), and *State v. Herron,* 376 S.W.2d 192 (Mo.Sup.1964), to support an inference that it was somehow this Court, rather than the Supreme Court of Missouri, that had ignored the teaching of those cases. The record establishes that this Court publicly applauded the Supreme Court of Missouri's decisions in *Pickel* and *Herron.*

In remarks that were published under the title *Postconviction Applications: Viewed by a Federal Judge,* 39 F.R.D. 281 (1965), I suggested to the ABA National Conference of State Trial Judges [11] that in order to solve the common problem faced by State and federal judges "the first step the federal and State judges in every district within every State could take would be to develop a spirit of understanding and cooperation between themselves in each State in the Union." *Id.* at 294. I "pointed to the experience that we have had with

---

trary notwithstanding. Chief Justice Marshall made clear in *Cohens v. Virginia,* 19 U.S. (6 Wheat) 264, 5 L.Ed. 257 (1821), five score and twenty-one years ago, when the Court considered the first appeal from a State court judgment in a criminal case, that the Supremacy Clause meant exactly what it said.

11. Professor Daniel J. Meador, who served as appointed counsel for the petitioner in *Case v. Nebraska,* and I were invited to lead a panel discussion on the subject of postconviction remedies at the 1965 meeting of that conference attended by State trial judges sitting in the various States in the Union.

such an experiment in Missouri" and said that:

> The Federal Court on which I sit was fortunate in establishing an extremely good liaison and understanding with the Supreme Court of Missouri.... Following informal discussions, and as time went on, it became apparent that the Supreme Court of Missouri, as a matter of judicial administration, was going to require a radical change in the manner in which the trial courts of Missouri had been processing postconviction applications to the State trial courts. *That change, which reflects the informal consultation between our courts, is stated by State v. Pickel, Mo., 376 S.W.2d 181, and State v. Herron, Mo., 376 S.W.2d 192, both decided March 9, 1964.* (Emphasis added).

*Id.*

I reported that in "a letter to my colleague, Judge Becker, the late Judge Hollingsworth commented that the Supreme Court of Missouri was consciously 'undertaking to impress upon the trial courts the advisability of having a full hearing wherever there is any reasonable grounds whatever for so doing.'" *Id.* It was with great pride that I reported that the "new and enlightened approach of the Supreme Court of Missouri enables federal courts sitting in this State to exercise their discretion to withhold any action on any application for habeas corpus filed in the federal court until the State court, in accordance with what is now an adequate State proceeding, tests the question raised in the decisions of the Supreme Court of the United States." *Id.* at 295.

Judge Hollingsworth's advice to Judge Becker that the Supreme Court of Missouri was consciously "undertaking to impress" the trial courts of Missouri with the necessity of conducting a full and fair hearing of

a Rule 27.26 motion was not limited to directing Judge Becker's attention to opinions that Judge Hollingsworth wrote for the Supreme Court of Missouri in *State v. Pickel* and *State v. Herron* after the Supreme Court of the United States trilogy opinions were handed down. That advice also directed attention to *State v. Moreland* 351 S.W.2d 33, 34 (Mo.Sup.1961), in which the Supreme Court of Missouri had appropriately recognized that "we are governed by the decisions of the United States Supreme Court." For all three cases reflected the construction given Rule 27.26 before its 1967 amendment.[12]

Judge Hollingsworth could have also directed attention to his excellent earlier 1955 opinion in *State v. Eaton*, 280 S.W.2d 63 (Mo.Sup.1955). For that case appropriately noted that Missouri's original Rule 27.26 "was taken from and to the extent here involved is, in substance, the same as ... Title 28, U.S.C.A. § 2255" which provided "a like remedy for relief of persons held in custody under void judgments of Federal courts." *Id.* at 65. Judge Hollingsworth concluded that a "review of the Federal decisions construing § 2255 clearly establishes that the facts alleged and the relief sought in the instant defendant's motion bring him squarely within the purview of the Federal statute."[13] *Id. Eaton* therefore reversed a trial court's denial of postconviction relief without an evidentiary hearing for the reason it was "clear that defendant's motion alleged facts sufficient to require hearing thereof as provided in Rule 27.26." *Id.* at 66.

The Rule 27.26 trial courts in *Pickel* and *Herron* had failed to conduct the evidentiary hearings required by Rule 27.26. In both cases the Supreme Court of Missouri, in reliance upon *Moreland* and on the principles articulated in the Supreme Court of the United States 1969 habeas corpus trilogy, properly reversed and remanded each

---

**12.** Judge Hollingsworth cited and relied on *State v. Moreland* in both *State v. Pickel* and *State v. Herron. See* 376 S.W.2d at 185 and 376 S.W.2d at 195.

**13.** Judge Hollingsworth, after discussing a number of the federal cases that construed the then relatively new federal Section 2255, reiterated

that under "the foregoing Federal decision and the cases therein cited, we must hold that defendant's motion alleged facts which, if proved, deprived him of due process of law and rendered his conviction unconstitutional and void." *Id.* at 66.

case to the Rule 27.26 trial court for it to conduct the evidentiary hearing required by Rule 27.26.[14]

The construction that the Supreme Court of Missouri gave Rule 27.26 in its original form in *Eaton, Moreland, Pickel,* and *Herron* anticipated the construction that would later be given 28 U.S.C. § 2255, the model from which Rule 27.26 was taken, in *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).[15] The Supreme Court of Missouri would not have needed to amend Rule 27.26 in 1967 if it had consistently construed and applied Rule 27.26 in the manner that rule was construed and applied in its earlier cases construing Rule 27.26 in its 1952 form, anything that Chief Justice Donnelly said in his *Flowers* dissent to the contrary notwithstanding.[16] Experience establishes that the difficulties that the Supreme Court of Missouri has encountered in its construction and application of Rule 27.26, both in its original and amended form, has directly resulted from its failure to vigorously apply the old judicial adage that while an appellate court carries the biggest stick, it must sometimes speak other than softly to attorney generals, prosecuting attorneys, and to trial courts in order to obtain compliance with the decisions of an appellate court.

It can hardly be fairly said the Supreme Court of Missouri has spoken, either clearly or loudly in its effort to obtain compliance with its Rule 27.26 as construed in *Eaton, Moreland, Pickel,* and *Herron,* or in the many other cases in which it construed and applied Rule 27.26 after that rule was amended in 1967.[17]

---

**14.** The construction given Rule 27.26 by the Supreme Court of Missouri in *Pickel* and *Herron* enabled this Court, in a short opinion written by Chief Judge Becker, to dismiss a petition for federal habeas corpus on exhaustion grounds in *Holland v. Steinhauser,* 242 F.Supp. 629, 631 (W.D.Mo.1965), for the reason that the "petitioner has not given the courts of Missouri the opportunity to review his complaints since 1950, and in the light of the Herron and Pickel cases, supra, he has available state post conviction remedies which he has not exhausted nor shown to be ineffective." *Id.* at 631. This Court applied the principles stated in *Holland* in numerous later cases that were dismissed without prejudice on exhaustion grounds.

**15.** *Kaufman v. United States* held that "[i]n *Townsend v. Sain, supra,* [372 U.S.] at 313, 318 [83 S.Ct. at 757, 759], we set down the circumstances under which a federal court must review constitutional claims ... presented by state prisoners" and that "[w]e perceive no differences between the situations of state and federal prisoners which should make allegations of the other circumstances listed in *Townsend v. Sain* less subject to scrutiny by a § 2255 court." 394 U.S. at 226, 227, 89 S.Ct. at 1074. The practical impact of that decision was that a federal district court that failed to conduct an evidentiary hearing under the *Townsend v. Sain* standard, could expect to be promptly reversed by a short per curiam Court of Appeals' opinion that would remand the case back to the district court for it to conduct the evidentiary hearing it should have conducted in the first place.

**16.** Under such a construction of original Rule 27.26, it is clear that if a Missouri trial court failed to conduct an evidentiary hearing in accordance with *Townsend v. Sain*'s standard, a Missouri appellate court would have only needed to enter a short per curiam order in the same pattern of a federal appellate court in a Section 2255 appeal that would have reversed and remanded the case to the State trial court for it to conduct the required evidentiary hearing. If the Missouri trial court had conducted a full and fair evidentiary hearing, prepared, and filed appropriate findings of fact and stated conclusions of law required by Rule 27.26 that would have articulated and applied controlling federal standards, a Missouri appellate court's consideration of such a case on direct appeal would be quite similar to a federal district court's habeas corpus review. A Missouri appellate court would have needed only to decide (1) whether the trial court had reliably found the facts and (2) whether the trial court had properly articulated and applied the controlling constitutional federal standard.

**17.** Indeed, *State v. Gee,* 408 S.W.2d 1 (Mo.Sup. 1966), authored by Judge Donnelly in 1965, could be added to the list of cases exemplified by *Eaton, Moreland, Pickel,* and *Herron* in which the Supreme Court of Missouri properly construed and applied Rule 27.26 in its 1952 form. For *Gee* presented questions of whether the defendant's plea of guilty was voluntary and whether he had waived his right to counsel. In *Gee,* Judge Donnelly quoted a relevant portion of *Moreland* and, citing *Herron,* concluded that "the order denying, without a hearing on its merits, the motion to vacate or correct sentence should be and is set aside and that the motion be heard on its merits. *State v. Herron,* Mo. Sup., 376 S.W.2d 192." 408 S.W.2d at 4.

## VII

The congenial and cooperative relationship that existed between the Judges of the Supreme Court of Missouri and the Judges of the Western District of Missouri was described in detail during the panel discussion of postconviction remedies at the ABA National Conference of State Trial Judges in 1965. That relationship continued to exist for a substantial period of time. For it was after further consultation and cooperation between the Judges of those two courts that the Supreme Court of Missouri amended Rule 27.26 in 1967 to further improve the procedures under which it was anticipated that Rule 27.26 would be construed and applied by the Supreme Court of Missouri in a manner consistent with the controlling decisions of the Supreme Court of the United States.

None of the present Judges of the Supreme Court of Missouri, however, and none of the Judges of the Western District of Missouri in active, as distinguished from senior service, were members of those respective courts at the time Rule 27.26 was amended in 1967.[18]

The active and senior Judges of this Court who are presently charged with duty of processing the large volume of state prisoner habeas corpus cases filed in this Court pursuant to the historic habeas corpus jurisdiction conferred on it pursuant to 28 U.S.C. § 2254 express the hope that the spirit of comity and cooperation that existed in the past may be revived so that the future relationship between this Court and the Supreme Court of Missouri will reflect the relationship that both courts enjoyed in the past.

18. Two of the Judges of each court presently on active service were not appointed until 1977, ten years after Rule 27.26 was amended, effective January 1, 1967; two Judges of this Court presently on active service were appointed in 1981; two Judges of the Supreme Court of Missouri were appointed in 1982, with another added in 1985; and two Judges of each court were not

## APPENDIX D

### JURIDICAL HISTORY OF THE SUPREME COURT OF MISSOURI'S CONSTRUCTION AND APPLICATION OF RULE 27.26

#### I

The difficulties that Missouri has experienced for more than thirty-five years with its State corrective process has resulted from the failure of the Supreme Court of Missouri to recognize and to clearly hold that Rule 27.26 in both its original 1952 form and in its 1967 amended form, was the exclusive postconviction remedy that it had established as a procedural substitute for a State habeas corpus proceeding.

After the Supreme Court of Missouri began to conduct a substantial number of original habeas corpus hearings in that court pursuant to the mandate of *Williams v. Kaiser*, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945), it recognized that some other adequate State postconviction process should be made available for hearing a state prisoner's federal claims that would shift the burden of conducting the required evidentiary hearings from the appellate to the trial courts of Missouri.

Thus in 1952 the Supreme Court of Missouri, took 28 U.S.C. § 2255 as its model and promulgated Rule 27.26. Original Rule 27.26 was in effect when the late Judge James A. Finch, Jr., became a member of the Supreme Court of Missouri in 1965. In his remarks on *Postconviction Proceedings Under Missouri Rule 27.26* at the Eighth Circuit Judicial Conference in 1970, published in 50 F.R.D. 437, Judge Finch described the confusion that had been created by the Supreme Court of Missouri's failure to definitively hold that Rule 27.26 was Missouri's exclusive postconviction remedy and that habeas corpus could

appointed until 1988. Judges Becker, Oliver, Collinson, and Hunter, who presently serve this Court as Senior Judges, were serving this Court as active Judges in 1967 and were thus the beneficiaries of the spirit of comity that both courts recognized when the Supreme Court of Missouri amended its Rule 27.26 in 1967.

no longer be considered as an available postconviction remedy for state prisoners.

Judge Finch stated that when he became a Judge of the Supreme Court of Missouri in 1965, he was most surprised "to note the large number of *pro se* habeas corpus petitions which the Supreme Court would receive each month from inmates of the Missouri penal institutions" and that in "many instances, these prisoners had never filed any motion under Rule 27.26 but instead resorted to a petition for habeas corpus in the Supreme Court." *Id.*

Judge Finch explained the reason that motivated the Supreme Court of Missouri to amend Rule 27.26 in 1967. He stated that:

> "In the first place, we felt that it was not feasible to attempt to handle post conviction remedies by original habeas corpus proceedings in the Supreme Court. We simply are not set up for holding extensive evidentiary hearings and do not have the time to do so.... We wanted to eliminate the filing of these habeas corpus petitions in our court and to direct the prisoners to file the prescribed motion in the sentencing court."

*Id.* at 438.

Judge Finch properly recognized that a constitutional question was presented under the Missouri Constitution by the Supreme Court of Missouri's promulgation of Rule 27.26 in 1952 and by that court's amendment of that rule in 1967. He stated, however, that to meet that problem, the procedures detailed in Amended Rule 27.26 expressly provided that a prisoner could file a postconviction "motion at any time"

and that therefore the amended "rule does not suspend rights available by habeas corpus but rather prescribes the procedure to be followed in the enforcement of those rights." [1] *Id.* at 439.

## II

The Supreme Court of Missouri had many opportunities to make clear that its 1952 Rule 27.26 was Missouri's exclusive State corrective process and that habeas corpus could no longer be considered as an available State postconviction procedure under which a state prisoner's postconviction claims could be heard and determined. *State v. Moreland,* 351 S.W.2d 33 (Mo.Sup. 1961), decided before Rule 27.26 was amended in 1967, is an excellent example of how the Supreme Court of Missouri consistently failed to take advantage of any of those many opportunities.

*Moreland* was a *pro se* appeal from the Circuit Court of Maries County's denial, without evidentiary hearing, of Moreland's *pro se* Rule 27.26 motion filed December 8, 1960 that sought to vacate a life sentence imposed by that court on January 28, 1929 on defendant's plea of guilty. [2] Thus the Rule 27.26 motion was filed thirty-one years after the defendant's conviction.

The *Moreland* court properly concluded that Moreland's Rule 27.26 motion must be considered as alleging "a denial of due process of law under the Fourteenth Amendment to the Constitution of the United States (whether or not the court was required to appoint counsel pursuant to what is now designated as Section 545.820 RSMo 1959, V.A.M.S., see *Williams v. Kaiser,* 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398)." *Id.* at 35.

---

1. Judge Finch explained that the Section 1(b) of the Revised Uniform Post Conviction Procedure contained a similar provision and that the comment following that section "recognized that the problem is to provide an expeditious remedy without violating constitutional provisions against suspending the writ of habeas corpus, and that this is accomplished by providing a single remedy which does not restrict the prisoner's right of collateral attack but simply prescribes the procedures to be employed in pursuing that remedy." *Id.*

2. Without the benefit of a brief filed on behalf of Moreland, the *Moreland* court properly stated that although the *pro se* Rule 27.26 motion was "lengthy and rambling, ... contains numerous unsupported conclusions, and ... is liberally sprinkled with pretentious legalisms and quotations from reported cases," a defendant's Rule 27.26 motion must be given a liberal construction and that for "purposes of this appeal we need consider only those allegations pertaining to the lack of and waiver of counsel at the time appellant entered his plea of guilty and was sentenced." 351 S.W.2d at 34.

**1280**

State v. Moreland also properly refused to follow earlier Supreme Court of Missouri decisions that placed a narrow construction on Rule 27.26 as adopted in 1952.[3] Rather, that case properly held that "we are bound by the decisions of the United States Supreme Court as to what does and does not constitute a denial of due process of law guaranteed by the Fourteenth Amendment." *Id.*

The *Moreland* court further properly held that under *Cash v. Culver*, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557 (1959), "the factual allegations [contained in the Rule 27.26 motion] as we have determined them to be by a liberal interpretation, must for purposes of this appeal be accepted as true."[4] *Id.* The *Moreland* court accordingly cited *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and numerous of the progeny of that case to properly conclude that "the trial court could not properly rule on the motion without a hearing on its merits." *Id.* at 36. The case was therefore reversed and remanded to the trial court for further proceedings for the reason that "appellant is entitled to a hearing on his motion in which he is afforded the opportunity to establish the facts as alleged in his motion, and it was error for the trial court to overrule the motion with-

out the hearing contemplated and required under the circumstances by Supreme Court Rule 27.26."[5] *Id.* at 37–38.

**III**

Up to that point, it must fairly be said that *State v. Moreland* was a highly commendable construction of Rule 27.26. Indeed, up to that point, *Moreland* anticipated the construction later to be placed on the federal postconviction remedy provided in 28 U.S.C. § 2255, the source of Rule 27.26, in *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1968).[6]

The manner in which *State v. Moreland* treated the Attorney General's argument based on Moreland's earlier unsuccessful effort to seek habeas corpus relief in the Circuit Court of Cole County, however, failed to make clear that Rule 27.26 provided the exclusive postconviction remedy available to a state prisoner. Indeed, the *Moreland* court implicitly assumed that habeas corpus was an additional postconviction remedy that a state prisoner could invoke to obtain a hearing and determination of the federal claim alleged in his Rule 27.26 motion.

The additional factual circumstances stated in *Moreland* established that More-

---

**3.** *See State v. Glenn*, 317 S.W.2d 403 (Mo.Sup. 1958), *cert. denied*, 358 U.S. 942, 79 S.Ct. 348, 3 L.Ed.2d 349 (1959); *State v. Kitchin*, 300 S.W.2d 420 (Mo.Sup.1957), *cert. denied*, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429 (1957); and *State v. Mischanko*, 272 S.W.2d 210 (Mo.Sup.1954).

**4.** *Cash v. Culver* presented the same Fourteenth Amendment question presented in *Williams v. Kaiser*. The Court stating that the "record here consists only of the habeas corpus petition and the Florida Supreme Court's bare order of denial." 358 U.S. at 634, 79 S.Ct. at 434. In reliance upon *Williams v. Kaiser* and other cited cases, the Court reversed the Supreme Court of Florida outright for the reason "the factual allegations of the petition must for present purposes be accepted as true." *Id.* The Supreme Court of Florida was therefore reversed outright without the necessity of an evidentiary hearing in either the State or federal court because "the allegations themselves made it incumbent upon the Florida courts to determine what the true facts were." *Id.* at 638, 79 S.Ct. at 436.

**5.** The trial court had also denied an earlier *pro se* Rule 27.26 motion filed by Moreland on Octo-

ber 21, 1959 without a hearing. The *Moreland* court properly rejected the Attorney General's argument that the trial court's denial of the 1959 motion precluded the grant of postconviction relief on the 1960 motion. The court properly stated that the 1952 "Supreme Court Rule 27.26 does not in every situation preclude a court from entertaining a second motion by a prisoner for similar relief" and that "the trial court erred in ruling on the first motion without holding the hearing and determining the facts as required by Supreme Court Rule 27.26." *Id.* at 37.

**6.** *See* Judge Hunter's analysis of the impact of *Kaufman v. United States* on Section 2255 proceedings in his article entitled *Post Conviction Remedies*, 50 F.R.D. 153 at 168. The *Kaufman* court made clear that the constitutionality of 28 U.S.C. § 2255 and State postconviction procedures that are modeled on the federal statute rests on the basic premise that those postconviction remedies are a substitution for, and not a suspension of the writ of habeas corpus.

land, or more probably a fellow inmate acting on his behalf,[7] had filed a petition for habeas corpus in the Circuit Court of Cole County before he filed his two Rule 27.26 motions in his sentencing court, the Circuit Court of Maries County. *Moreland* noted that the Circuit Court of Maries County's "order overruling the first [Rule 27.26] motion, and also in the order overruling the pending [Rule 27.26] motion, [had] affirmatively shown that the trial court gave consideration to, and in fact based its ruling on, a judgment of the Circuit Court of Cole County in a habeas corpus proceeding filed by appellant." 351 S.W.2d at 37.

The Attorney General argued in an effort to persuade the *Moreland* court that the defendant was not entitled to an evidentiary hearing on his Rule 27.26 motion, that "the trial court had before it the pleadings of appellant in the habeas corpus proceeding in the Circuit Court of Cole County" and that those pleadings established as a matter of law that " 'appellant waived his right to counsel by his own action when he entered his plea of guilty in open court.' " *Id.* at 36. The *Moreland* court properly rejected the Attorney General's waiver argument, stating that it did not "agree that the pleadings referred to demonstrate as a matter of law that appellant 'intelligently waived his right to counsel' ". *Id.* at 36.

The *Moreland* court, however, based its rejection of the Attorney General's argument on the ground that "the records from the Circuit Court of Cole County were not properly before the court for its consideration." [8] *Id.* The *Moreland* court could have definitively rejected the Attorney General's argument by stating: "The Attorney General's untenable argument is rejected on the ground that the Circuit Court of Cole County did not have jurisdiction to

conduct a habeas corpus proceeding for the reason Rule 27.26 provides the exclusive postconviction remedy available to the defendant under the rules of this Court."

The *Moreland* court could have appropriately added for the guidance of the trial courts of Missouri that if a prisoner should in the future file a *pro se* petition for habeas corpus in a trial court other than the sentencing court, such a petition should promptly be dismissed without prejudice and with the express advice to the prisoner that a Rule 27.26 motion in the sentencing court was his exclusive available postconviction remedy. The trial courts of Missouri could have been further directed to treat a *pro se* petition for habeas corpus filed in a sentencing court as a Rule 27.26 motion and that counsel appointed under Rule 27.26 should be advised to file an amended Rule 27.26 motion. Similar directions have been made to the federal district courts by the various federal courts of appeals over the years in their administration of 28 U.S.C. § 2255 on which Rule 27.26 was modeled.

*State v. Moreland*, however, failed to utilize the excellent opportunity afforded under the circumstances of that case to definitively hold, in accordance with the numerous federal cases construing 28 U.S.C. § 2255, that Missouri's Rule 27.26 provided an exclusive procedural substitute for habeas corpus and that, as such, must be considered to be the exclusive available State corrective process that a state prisoner could utilize to establish both his State and federal claims to postconviction relief. The failure of *Moreland* to make such a definitive holding created difficulties in the administration of Rule 27.26 as promulgated in 1952 as discussed by Judge Finch and also created substantial confusion in regard to the continued availability of ha-

---

**7.** Moreland apparently was " 'an uneducated person having no experience with or knowledge of the law and having only the equivalent of a second grade elementary education.' " 351 S.W.2d at 35.

**8.** The *Moreland* court explained the theory upon which the Attorney General's argument was rejected by stating that: "We find no authority whatever for the Circuit Court of Maries County

to consider the records of the Circuit Court of Cole County when ruling on a motion filed pursuant to Supreme Court Rule 27.26 without holding a hearing thereon. . . . When the court judicially noticed its records pertaining to the first motion, it should also have judicially noticed that the records of the habeas corpus proceeding were wrongfully there." *Id.* at 37.

beas corpus as a supplemental available State postconviction process.

## IV

The Supreme Court of Missouri was afforded many opportunities to clearly hold that Amended Rule 27.26 was Missouri's exclusive State corrective process and that habeas corpus was not an available postconviction procedure under which a state prisoner's petition could be heard and determined. The best opportunity to do so was afforded when the constitutionality of Amended Rule 27.26 was presented in 1976.

*Wiglesworth v. Wyrick*, 531 S.W.2d 713 (Mo.Sup.1976) (en banc), decided in 1976, required the Supreme Court of Missouri to decide two questions presented under the Missouri Constitution. The first question was whether Rule 27.26 was "unconstitutional as a suspension of the writ of habeas corpus in violation of Art. I, § 12, Mo. Const." 531 S.W.2d at 716. The *Wiglesworth* court properly answered that question in the negative, relying primarily on *United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952), and other federal cases which considered the constitutionality of 28 U.S.C. § 2255. The second question presented was whether "Rule 27.26 violates Art. 5, § 4, Mo. Const., which provides that '[t]he supreme court, courts of appeals, *and circuit courts* * * * may issue and determine original remedial writs.'"[9] (Emphasis added). *Id.* at 721. The argument that Amended Rule 27.26 violated that section of the Missouri Constitution was also properly rejected.

While *Wiglesworth v. Wyrick* properly concluded that Rule 27.26 did not unconstitutionally suspend the writ of habeas corpus in violation of Art. 1, § 12 of the Missouri Constitution, the Supreme Court of Missouri again failed to definitively hold that Rule 27.26, as amended in 1967, must be considered as Missouri's exclusive postconviction corrective process.

Professor Anderson stated in the conclusion of his article entitled "Post–Conviction Relief in Missouri—Five Years under Amended Rule 27.26", Mo.L.Rev. 1 (Winter 1973) that:

> Faced with the expansion of federal habeas corpus jurisdiction under the trilogy, the Missouri Supreme Court wisely amended rule 27.26 to "provide a postconviction procedure in accord with the principles enunciated in the ... trilogy" that was "designed to *discover and adjudicate all claims for relief in one application.*" By "radically amending" the rule and encouraging prisoners to assert all claims for relief in one motion, the supreme court probably intended to maximize Missouri's control over criminal convictions, maximize the finality of convictions, secure the federal constitutional rights of defendants in Missouri courts, and thus reduce the number of federal habeas corpus hearings and the number of instances in which federal courts would feel compelled to grant habeas corpus in order to protect federal constitutional rights.[10]

*Id.* at 42.

The objectives that the Supreme Court of Missouri sought to obtain by its 1967 amendment of Rule 27.26, as accurately

---

**9.** While the Missouri Constitution provided that *circuit courts,* as well as the Supreme Court of Missouri and the Missouri Courts of Appeal, "may issue and determine original remedial writs" at the time *Wiglesworth v. Wyrick* was decided, a subsequent amendment of Art. 5, § 4 of the Missouri Constitution now provides that only the "supreme court and the district courts of appeals may issue and determine original remedial writs." Jurisdiction to "issue and determine original remedial writs" is presently vested in the circuit courts of Missouri pursuant to Art. 5, § 14(a) of the current Constitution of Missouri.

**10.** Professor Anderson added that: "In 1967, then, it appeared that Missouri had found an

ideal way to reach an accommodation between state criminal procedure and federal postconviction review; hopefully, amended rule 27.26 would greatly improve 'the delicate federal-state relationship in the criminal law enforcement field.' The Missouri courts apparently had assumed complete responsibility for protecting federal constitutional rights in accordance with federal principles; the federal courts still might review questions of federal law. The extensive case history since 1967 indicates that, with few exceptions, the federal-state accommodation under amended rule 27.26 works well. Missouri courts fully consider most federal constitutional

summarized by Professor Anderson's article, were consistent with the following statement made by Justice Brennan in his concurring opinion in *Case v. Nebraska:*

> The desirability of minimizing the necessity for resort by state prisoners to federal habeas corpus is not to be denied. Our federal system entrusts the States with primary responsibility for the administration of their criminal laws. The Fourteenth Amendment and the Supremacy Clause make requirements of fair and just procedures an integral part of those laws, and state procedures should ideally include adequate administration of these guarantees as well. If, by effective corrective processes, the States assumed this burden, the exhaustion requirement of 28 U.S.C. § 2254 (1958 ed.) would clearly promote state primacy in the implementation of these guarantees.... Greater finality would inevitably attach to state court determinations of federal constitutional questions, because further evidentiary hearings on federal habeas corpus would, if the conditions of *Townsend v. Sain* were met, prove unnecessary.

381 U.S. at 344–45, 85 S.Ct. at 1491–92.

### V

Professor Anderson's review of the first five years of Missouri's experience with Amended Rule 27.26, however, did not take into account the fact that the Supreme Court of Missouri, as illustrated by *State v. Moreland,* had earlier failed to construe and apply Rule 27.26 in its 1952 form in the manner that the model for that rule, 28 U.S.C. § 2255, had been consistently construed and applied by the federal courts and by other States that also took the federal statute as their model. *State v. Moreland* simply failed to make clear that a State habeas corpus proceeding was not a supplemental State corrective process that was available for the hearing and determination of a state prisoner's postconviction claims.

*Wiglesworth v. Wyrick* had not been decided at the time Professor Anderson wrote his article. That case afforded an ideal opportunity for the Supreme Court of Missouri to clearly and firmly decide that Amended Rule 27.26 was Missouri's exclusive State corrective process. For that case directly presented the question of whether the promulgation of Rule 27.26 violated Art. 1, § 12 of the Missouri Constitution which prohibited the suspension of the writ of habeas corpus.

This Court's need for further information is underlined by the manner in which the Supreme Court of Missouri has consistently indicated that a State habeas corpus proceeding has always been available as a supplemental State corrective process in spite of the construction and application that other courts have given 28 U.S.C. § 2255 and other State postconviction procedures that have been modeled on the federal statute. The repeal of Rule 27.26 could be said to have done no more than leave a State habeas corpus proceeding as Missouri's sole and exclusive State corrective process.

The orders that will be entered will seek appropriate information from the Attorney General of Missouri before we reach the important questions that have been discussed in this memorandum opinion and the appendices that are attached thereto.

---

questions on their merits. In most instances, Missouri courts have properly applied federal law to Missouri findings of fact; over a five-year period, federal courts have granted habeas corpus relief in only eight cases that the Missouri courts had previously decided." *Id.* at 43. (Footnotes omitted).